826 So.2d 571 (2002)
Rosemary KELLY
v.
The HOUSING AUTHORITY OF NEW ORLEANS.
No. 2002-CA-0624.
Court of Appeal of Louisiana, Fourth Circuit.
August 14, 2002.
*572 Darleen M. Jacobs, Al A. Sarrat, Robert A. Preston, Jr., Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellee.
Marie A. Bookman, and Deborah L. Wilson, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
Judge DAVID S. GORBATY.
The Housing Authority of New Orleans (HANO) appeals a judgment in which it was held liable for damages sustained by Rosemary Kelly in an alleged accident on property managed by HANO in the B.W. Cooper Housing Development. For the following reasons, we reverse the judgment of the trial court.

*573 FACTS:
Rosemary Kelly lived in an apartment managed by HANO at 1104 S. Dorgenois St., within the B.W. Cooper Housing Development. According to a report made to HANO by Ms. Kelly on July 26, 1993, the date of the alleged accident, she slipped on a staircase in the rear of her apartment while she was descending the stairs carrying two trash bags. Ms. Kelly reported that the cause of her fall was a piece of iron coming lose from the step as she descended. Ms. Kelly stated that she injured her back and left arm, and that Jacqueline Henry witnessed the accident.
The same day as the accident, Ms. Kelly visited her attorney's office, and Dr. Robert C. Brown, a family practice physician. She began treatment with Dr. Essam Elmorshidy on the following day. The history taken by Dr. Elmorshidy on July 27, 1993, indicates that Ms. Kelly "fell yesterday on 7/26/93 when she was going down the steps and there was a garbage bag in both hands and she slipped, and landed on her back and neck and head and the left elbow." She treated with Dr. Elmorshidy until August 29, 1996, when he discharged her to be seen again on an asneeded basis.
Ms. Kelly died of cancer in July of 1997. Her cousin, Shirley Mae Clark, was substituted as party plaintiff after her death.

TRIAL PROCEEDINGS:
A judge trial of this matter was conducted on November 15, 2001. Ms. Clark, the substituted party plaintiff, did not appear for trial. Plaintiff counsel sought to admit Ms. Clark's deposition, claiming that Ms. Clark was suffering from several medical conditions that prevented her appearance at trial. No evidence was produced to substantiate plaintiff counsel's claims. Defense counsel objected to the admission of the deposition, arguing that it had been taken for discovery purposes only, not for perpetuation. Defense counsel also moved for a dismissal of the case for failure of plaintiff to appear. The court denied the defense motion, and ultimately allowed admission of the deposition.
Plaintiff called three witnesses: Michael Sullivan, plaintiff counsel's paralegal; Annabell Ambeau, Ms. Kelly's neighbor; and Laura Shabazz, the HANO employee who took the accident report from Ms. Kelly.
After plaintiff rested, defense counsel moved to dismiss the case based on plaintiffs failure to prove causation. The motion was denied.
The defense called Wesley Recasner, director of maintenance for the B.W. Cooper Housing Development. Mr. Recasner testified that, as custodian of the maintenance records for this particular housing development, he had reviewed the records in preparation for trial, and that the records did not reflect any notice of a defect in the subject stairway prior to Ms. Kelly's alleged accident. The witness admitted that he was not employed by HANO at the time of the alleged accident; however, he had worked for HANO from 1981 to 1988, and again from 1996 through the time of trial. Although he was not employed by HANO at the time of the alleged accident, it was his observation that the record-keeping procedure had not changed during his absence. On cross-examination, Mr. Recasner admitted that he had no personal knowledge of what the record-keeping procedure was during the time period of the accident. Mr. Recasner did not work for HANO at the time of the alleged accident, but testified that during his period of employment prior to that time, he probably had visited that particular apartment. He explained that all of the stairways were basically identical. He admitted that the stairs depicted in plaintiff's pictures did *574 not look like the stairs in the various housing developments. The witness identified a work order contained in the maintenance records that indicated a repair was made to either the handrails or stairs at plaintiffs apartment on the date of the alleged accident. The work order was received at approximately 9 a.m., and indicated that it took approximately one hour to repair the stairs. In answer to the court's questions, Mr. Recasner explained that HUD required two inspections per year. One was an inspection of all apartments, and one was an inspection of a percentage of the apartments. The maintenance records indicated that Ms. Kelly's apartment was inspected on July 21, 1992, and again on July 18, 1993, eight days before the alleged accident. Although inspection records of July 18 indicated numerous repairs were made to plaintiffs apartment, there was no indication of any defect or repairs to the stairway in question.
On December 6, 2001, the trial court rendered a Judgment with Reasons. The court stated that the facts ascertained at trial were as follows:
... Rosemary Kelly (now deceased) was injured on July 26, 1993, at approximately 8:30 a.m. when she fell while attempting to descend the stairway to her apartment because the stairway broke due to its dilapidated condition. She immediately reported the accident to defendant, and after showing the bruises and marks on her body to her neighbor, she sought medical treatment from Dr. Robert C. Brown. This same day she advised her attorney of the incident. He went to the scene and had pictures taken of the stairway area which broke while she was descending, as well as the entire stairway. Defendant came to the scene and repaired the broken stairway on the same date, but not before the pictures in evidence were taken by her attorney's paralegal. All of the facts surrounding the date of this accident clearly attest to its having occurred as Rosemary Kelly stated.
Based on these facts, the court found HANO liable for Ms. Kelly's injuries and awarded her $6,798.82 for medical expenses and $35,000 for pain and suffering, plus interest from date of demand, and costs.

DISCUSSION:
HANO makes several assignments of error, several of which are interrelated. The first and main assignment of error is that plaintiff failed to sustain her burden of proving that an accident occurred, or that the alleged defect was a cause-in-fact of her injuries. Directly related to this assignment is HANO's assignment alleging error by the trial court in not granting its motion to dismiss at the close of plaintiffs case, and in admitting hearsay statements by plaintiff used to identify and authenticate photographs taken by plaintiff counsel's paralegal.
Louisiana Code of Civil Procedure art. 1672 B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The motion should be granted only if the plaintiff fails to prove his case by a preponderance of the evidence. Winston v. *575 Flamingo Casino, 99-0209 (La.App. 4 Cir. 9/22/99), 746 So.2d 622; Haworth v. L'Hoste, 95-0714 (La.App. 4 Cir. 11/30/95), 664 So.2d 1335. All evidence, both direct and circumstantial, taken as a whole must show that the causation or fact sought to be proved is more probable than not. Winston, supra.
In Morgan v. City of New Orleans, 94-0874 (La.App. 4 Cir. 12/15/94), 647 So.2d 1308, this Court set out the relevant criteria for review of a trial court judgment granting this motion:
1. The judge must weigh and evaluate all the evidence presented to that point and determine whether the plaintiff established a prima facie case by a preponderance of the evidence.
2. Unlike the motion for directed verdict in a jury trial, the trial judge reviews the evidence without any special inference favorable to the party opposed to the motion.
3. A dismissal under Article 1672 B should not be reversed absent manifest error.
The manifest error standard provides that where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Trans. & Dev., 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. at 882. The reviewing court may not disturb the reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony. Id. However, where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness' story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon credibility determination. Id. If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
Our review of the record reveals that there is no basis in fact for the trial court's findings.
It is well settled that it is the plaintiffs burden to prove his case by a preponderance of the evidence. Thus, Ms. Kelly must prove that an accident occurred due to a defect in the stairway, that the accident caused her injuries, and that she suffered damages as a result of those injuries. She has woefully failed to do so.
The evidence offered by plaintiff to prove that an accident occurred or that a defect existed was an unverified report made to HANO by Ms. Kelly on the date of the alleged accident, photographs allegedly taken by her attorney's paralegal on the afternoon of the accident, and medical bills and doctors' reports indicating that she was treated for injuries she claimed to have incurred on July 26, 1993.
Michael Sullivan, plaintiff attorney's paralegal was allowed to testify for the sole purpose of introducing photographs he took of the alleged accident site. The only proof offered that these photographs were of the accident site was the paralegal's testimony that Ms. Kelly told *576 him where she had fallen. What Ms. Kelly told the paralegal is clearly inadmissible hearsay to which defense counsel objected. The testimony was offered solely to show the truth of the matter asserted, i.e., the photographs were of the stairway and landing on which Ms. Kelly fell. See generally La.Code Evid. art. 801, et seq. The only way Mr. Sullivan could properly authenticate the photos was if he testified that he took them based on personal knowledge of where Ms. Kelly fell. La. Code Evid. art. 901 B(1). His testimony did not disclose that he had the requisite personal knowledge. As such, the photos taken by Mr. Sullivan should not have been admitted into evidence. The fact that Ms. Kelly was deceased at the time of trial and therefore could not testify as to the photos' authenticity, did not make the photos the "best evidence" of what they purported to show, as the trial court ruled.
This Court is also concerned about the authenticity of the photographs based upon the record evidence. Michael Sullivan testified that he could not recall what time Ms. Kelly arrived at his office, however, he testified that it was afternoon when he accompanied her to her apartment to take the photos. The record also includes a HANO work order indicating that the stairs were repaired beginning at 9:03 a.m. on the day of the alleged accident, and that the repairs took approximately one hour. This begs the question: How did Mr. Sullivan take the photos indicating a defective condition when the stairs had been repaired prior to the photos being taken?
Ms. Annabell Ambeau, Ms. Kelly's neighbor, testified that she did not see Ms. Kelly fall, she did not recall the stairs in question being in the deplorable condition depicted in the photographs, and otherwise had no personal knowledge of Ms. Kelly's accident. The only reason she knew anything at all about the accident was that Ms. Kelly told her she fell. Defense counsel objected to the testimony, but was overruled. Ms. Ambeau's recollection of the stairs in question was minimal. She testified that she had only used the stairs once or twice during the time she lived in her apartment, preferring to use the front stairs. Ms. Ambeau said that the photos introduced by plaintiff may have depicted the stairs in question, but based on her observations, she did not think the stairs were in as bad a state of disrepair as the photos indicated. She specifically testified, "I guess it must be them, but it doesn't look like the ones that was at my house, the ones on the side here." When asked by plaintiff's counsel if she had told the paralegal the morning of trial that she never used the stairs because they were in bad condition, Ms. Ambeau replied, "I didn't say they were in bad condition. I said I didn't use the back steps."
The trial court made the factual finding that Ms. Kelly showed "the bruises and marks on her body to her neighbor." Ms. Ambeau did state on direct examination that she "saw" Ms. Kelly and spoke to her after the alleged accident. However, on cross-examination she explained that she spoke to Ms. Kelly through the closed door. When asked if she only knew about the accident based on what someone told her, she responded, "Yes." When asked if she had any personal knowledge about the accident, she responded, "No." At no point in her testimony did she say that she saw any marks on Ms. Kelly. She did say that she heard a noise at the time Ms. Kelly told her she fell, but this testimony is again based on hearsay. Ms. Ambeau was quite adamant that she did not witness any accident.
The only other witness offered by plaintiff was Laura Shabazz, the HANO employee who took the accident report from Ms. Kelly. Ms. Shabazz testified that Ms. Kelly reported the accident at 8:30 a.m. on July 26, 1993. Ms. Shabazz did not visit *577 the accident site after the report was made. When shown the photos introduced by plaintiff, she could not verify if those were the stairs where plaintiff allegedly fell because she never saw the stairs. Although plaintiff's counsel attempted to get the witness to attest to the truthfulness of the report, the witness explained that all she did was type what Ms. Kelly told her. She had no personal knowledge of whether the accident actually occurred, or of the condition of the stairs.

CONCLUSION:
Based on a thorough review of the record, we must conclude that the trial court's refusal to grant HANO's motion for involuntary dismissal at the close of plaintiff's case was error. The admissible evidence does not support a finding that plaintiff met her burden of proving her case by a preponderance of the evidence. The only evidence that an accident occurred or that a defect existed was Ms. Kelly's unverified report to HANO. Although Ms. Kelly claims in the report that Jacqueline Kennedy witnessed the accident, Ms. Kennedy did not testify at trial, nor was her deposition testimony offered. Dr. Elmorshidy's report likewise does not establish that an accident occurred, but merely reports what Ms. Kelly told the doctor. This evidence is insufficient to establish that an accident occurred. Therefore, we find that plaintiff failed to carry her burden of proof by a preponderance of the evidence, and that the trial court erred in not granting HANO's motion for involuntary dismissal.
Accordingly, we reverse the judgment of the trial court. All costs of these proceedings are assessed to plaintiff.[1]
REVERSED.
NOTES
[1] We pretermit discussion of appellant's remaining assignments of error.