WILLIAMS, J.
| plaintiffs, Robert Levendikis and Ark-La-Tex Safety Showers, LLC, appeal the denial of their motion for a judgment declaring that defendant, Tony Jorio, had withdrawn as a member of the LLC. Plaintiffs also appeal the court’s award of attorney fees to both parties. For the following reasons, we affirm in part and reverse in part.
FACTS
Plaintiff, Robert Levendikis, a resident of the state of Texas, and defendant, Tony Jorio, a resident of the state of Louisiana, were acquaintances who formed the limited liability company, Ark-La-Tex Safety Showers, LLC. The LLC was in the business of supplying mobile safety showers and eyewash equipment to the oilfield drilling and production industry. The showers and eyewash equipment were constructed on trailers which were transported and used onsite at oil drilling locations.
On October 27, 2009, Levendikis and Jorio entered into an operating agreement, whereby they agreed that they would be the sole members of the LLC. Levendikis owned 51% interest and Jorio owned the remaining 49%.[1]
Soon after the first few trailers were constructed, Levendikis formed the belief that Jorio was not shouldering his share of responsibility for the business. According to Levendikis, Jorio was not fully contributing to the construction and/or servicing of the trailers and was not committed to the ^growth of the business. Levendikis *989 testified that Jorio approached him in March 2011, asking for a distribution of the LLC’s assets; Levendikis refused to allow the distribution. Soon thereafter, Jorio approached him again, asking for his share of the funds in the company’s bank account, as well has his share of the equipment. Again, Levendikis refused.
On March 24, 2011, Jorio unilaterally withdrew $25,000 from the LLC’s bank account. According to Levendikis, the funds were withdrawn for Jorio’s personal use and the withdrawal was made without Levendikis’s knowledge or consent. Jorio maintained that Levendikis had made similar withdrawals from the company’s bank account.
On May 24, 2011, Levendikis and Ark-La-Tex Safety Showers, LLC (collectively “plaintiffs”) filed a “petition for damages and declaratory relief and application for injunctive relief;” Jorio was named the sole defendant. Plaintiffs alleged that Jorio had withdrawn as a member of the LLC; therefore, his actions constituted a breach of his duties as a member and a breach of the operating agreement.[2] Plaintiffs also alleged that Jorio was liable “for all monetary damages as a result of the breach.” Plaintiffs sought a judgment declaring that Jorio had withdrawn as a member of the LLC; Isplaintiffs also sought to enjoin Jo-rio from, inter alia, withdrawing any funds or taking possession of any assets belonging to the LLC; from making disparaging remarks about plaintiffs; and from engaging in any conduct harmful to the company. Additionally, plaintiffs sought attorney fees and court costs.
On June 9, 2011, Jorio filed an answer to plaintiffs’ petition, a reconventional demand, petition for declaratory relief and an application for injunctive relief. Jorio alleged, inter alia, (1) Levendikis withdrew funds from the company’s accounts without his (Jorio’s) consent, thereby breaching his duties as a member and manager of the LLC and the operating agreement; (2) Levendikis had damaged his reputation by disparaging him to current and former customers of the business and to potential employers; (3) he is entitled to receive the fair market value of his 49% ownership interest; and (4) he is entitled to have an audit of the company’s books conducted. Jorio also sought injunctive relief to enjoin Levendikis from making derogatory comments about him. Additionally, he sought a declaratory judgment to Levendikis to deliver copies of the LLC’s books and records to him and attorney fees and costs.
A hearing was held on June 15, 2011. Thereafter, the parties entered into “Stipulated Preliminary Injunctions,” in which they agreed that Jorio would be enjoined as follows:
a) From withdrawing funds or transferring or taking possession of any assets belonging] to Ark-La-Tex Safety Showers, LLC, or rented, leased, or loaned to Ark-La-Tex Safety Showers, LLC;
*990 b) Prom making any disparaging, negative, or deleterious comments concerning Ark-La-Tex Safety Showers, LLC, |4or Robert J. Levendikis;
c) From maintaining possession, custody, or control of any property of Ark-La-Tex Safety Showers, LLC, or rented, leased, or loaned to Ark-La-Tex Safety Showers, LLC[.]
The parties also agreed that Jorio would “transfer to Ark-La-Tex Safety Showers, LLC, the possession, custody, or control of any property which is owned by, leased or rented to Ark-La-Tex Safety Showers, LLC[.]” Further, the parties agreed that Levendikis would be enjoined from “making any disparaging, negative, or deleterious comments concerning [Jorio].”
A trial was held on May 31, 8012, during which the bulk of the testimony centered around the value of the LLC’s assets. Le-vendikis and Jorio provided conflicting testimony. For example, Levendikis testified that the company had six 16-foot trailers that were “workable” as of March 24, 2011; Jorio testified that the company had eight operating trailers. Levendikis testified that the value of each trailer was approximately $14,500; Jorio estimated that value to be $27,000. Jorio testified that the LLC had approximately $85,000 in outstanding invoices to be billed as of March 24, 2011; Levendikis testified that he did not know the value of the outstanding invoices.
At the conclusion of the trial, the trial court concluded that the LLC did not have any outstanding liabilities and valued the company’s assets at $133,608.60.[3] The court also concluded that Levendikis’s monetary interest |ain the company was $68,140.39 (51% of the total assets) and Jorio’s interest was $65,468.21 (49% of the total assets). The court reduced Jorio’s interest by $25,000, the amount he withdrew from the company’s bank account in March 2011. Additionally, the court concluded that “all other alleged claims should be dismissed for lack of proof by a preponderance of evidence.” The court scheduled a hearing “for presentation of evidence and/or arguments of Counsel,” noting that any evidence and/or arguments shall be limited to the following issues:
A.) Permanent injunctive relief.
B.) Future participation in the LLC by Plaintiff and Defendant.
C.) Dissolution of the LLC.
D.) Attorney fees.
E.) Assessment of Court costs.
During the evidentiary hearing, counsel for both parties conceded that neither party desired to continue working together because they were unable to “get along.” However, counsel for Levendikis opposed dissolution of the LLC. Counsel for plaintiffs continued to argue that Jorio had withdrawn as a member of the LLC, while counsel for Jorio stated, “We are still a member of the LLC 49 percent[.]”
At the conclusion of the hearing, the court denied plaintiffs’ claim for |fidamages based upon Jorio’s alleged withdrawal as a member of the LLC. The court concluded that plaintiffs failed to prove that Jorio withdrew as a member of the LLC, noting that Jorio expressly denied that he intended to do so. The court also noted that although Levendikis testified that Jorio was not doing his share of the work in *991 constructing the showers/trailers, Levendi-kis failed to provide any specific examples of conduct suggesting that Jorio had withdrawn from the LLC.
Additionally, citing the LLC’s operating agreement, the court concluded that both parties were “prevailing parties” and awarded attorney fees to each party, to be paid from the assets of the LLC. The court awarded attorney fees in the amount of $7,672.10 to plaintiffs and $10,020 to defendant. The court also ordered court costs to be paid from the company’s assets.
Plaintiffs appeal.
DISCUSSION
Plaintiffs contend the trial court erred in denying their motion for a judgment declaring that Jorio had withdrawn as a member of the LLC. Plaintiffs argue that counsel for both parties stipulated that Jorio had withdrawn as a member of the LLC. According to plaintiffs, during the entire trial, both sides operated under the assumption that Jorio had indeed withdrawn; therefore, all of the evidence centered around the assets of the LLC.
A declaratory judgment is one that simply establishes the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done, and its distinctive characteristic is that the ^^declaration stands by itself, with no executory process following as a matter of course, so that it is distinguished from a direct action in that it does not seek execution or performance from the defendant or the opposing litigants. Billingsley v. City of Baton Rouge, 95-2162 (La.App. 1st Cir.4/30/96), 673 So.2d 300, writ denied, 96-1490 (La.9/20/96), 679 So.2d 439. Appellate courts review a district court’s decision to grant or deny a declaratory judgment using the abuse of discretion standard. Mai v. Floyd, 2005-2301 (La.App. 1st Cir.12/6/06), 951 So.2d 244, writ denied, 2007-0581 (La.5/4/07), 956 So.2d 619.
A stipulation has the effect of binding all parties and the court. A trial court is bound to render judgment in accordance with the stipulations between the parties where the stipulations are not in derogation of the law. Such agreements are the law of the case. Becht v. Morgan Building & Spas, Inc., 2002-2047 (La.4/23/03), 843 So.2d 1109; R.J. D’Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983).
In the instant case, plaintiffs contend the parties entered into a stipulation during the trial that Jorio had withdrawn as a member of the LLC, effective March 24, 2011; however, defendant denies that claim. The record does not contain any evidence which clearly establishes that the parties entered into a stipulation during the trial that Jorio had withdrawn. The record contains the following colloquy:
[Plaintiffs’ Counsel]: At the time this lawsuit was filed, there was not a formal withdrawal by Mr. Jorio from the LLC and so what I am proving is that Mr. Jorio did not carry his weight in the businesses; that Mr. Jorio at some point, I believe the evidence will show, that he made a demand for his share of the equity in the business. When 18that was refused, he, without authority, withdrew a specific fraction of the bank account, and that that constitutes his withdrawal from the LLC. If counsel is willing to stipulate that on March 24, 2011, Mr. Jorio withdrew from the LLC, that would shorten the case.
[Defendant’s Counsel]: Well, your pleadings allege [Jorio] withdrew] on April 7th. Counsel[,] Mr. Jackson[,] said he’d withdrawn. We’re agreeable *992 to valuing his business, the ownership of his 49 percent on 24 March 11. And we’re going to present testimony [concerning] the value of his business — his ownership interest was on that date. Does that help? Are you agreeable with the fact that we should value his business ownership 24 March 11?
[Plaintiffs’ Counsel]: Yes.
[Defendant’s Counsel]: Okay. We are agreeable to what you say withdrew or was expelled, we want to value his interest on 24 March 11.
s¡; # *
However, during the hearing conducted on September 12, 2012, counsel for Jorio stated that Jorio was “still a member of the LLC.” Plaintiffs’ counsel stated, “As I understand what the Court has said this afternoon, it’s dealt with the issue of valuation of Mr. Jorio’s shares, or 49 percent interest in the LLC, that the Court has not ruled with regard to the issue of the withdrawal or not.”
After reviewing the transcript, we find that there was no express stipulation that Jorio had withdrawn as a member of the LLC. Counsel for both parties mentioned the term “stipulation” during their arguments to the court. However, it was unclear what the purported “stipulation” entailed. On at least one occasion, the trial court allowed a recess to give the parties the opportunity to reach an agreement regarding the matters to which they would stipulate and which matters would be presented to the court at the |9trial. However, the parties were unable to reach an agreement.
Thereafter, unpersuaded that the parties had entered into a stipulation, the court afforded the parties the opportunity to present evidence as to whether Jorio had withdrawn. During the hearing, Le-vendikis testified with regard to his and Jorio’s ownership interests in the LLC and the amount of money left in the LLC’s account at the time Jorio withdrew $25,000. He stated that Jorio approached him and expressed his desire to withdraw money from the LLC’s bank account because the money in the account was “building up.” Levendikis testified that he told Jorio that he did not feel comfortable withdrawing money from the account at that time. Thereafter, Jorio approached him again, wanting to withdraw “his part of the money that was in the account.” Levendi-kis testified as follows:
He wanted his half of what was in the account. He wanted to take half the equipment that we had operating at that time, and he wanted to run his half of the business the way he wanted to run it and I could run my half the way I wanted to run it. And I told him there was no way that that could ever work.
According to Levendikis, Jorio “got pretty hostile” and informed him that “he was going to take it or if I didn’t give it to him he was going to, you know, get a lawyer and come after me.” Regarding this conversation, Levendikis further testified that he informed Jorio that if he withdrew any funds from the account, then he would consider that action as Jorio’s withdrawal from the company. In response, Jorio informed him that he was not withdrawing; he just wanted money from the company’s account. Levendikis also testified that Jo-rio stopped participating in the business after he withdrew the $25,000.
[ inJorio testified that he did not withdraw from the business. Rather, he stated that Levendikis “locked [him] out of the business” in March 2011, and he was no longer able to participate as a member. Jorio maintained that he did not intend to withdraw from the LLC and he continued to consider himself a 49% owner of the business.
*993 In his closing remarks, counsel for plaintiffs re-urged his contention that the parties had stipulated that Jorio had withdrawn from the business as of March 24, 2011. Counsel directed the court to specific pages of the transcript which, according to him, proved that the parties had stipulated that Jorio had withdrawn. Counsel for Jorio characterized plaintiffs’ counsel’s remarks as a “misrepresentation.” Jorio’s counsel also argued that his comments on the transcript indicated that Jorio had not voluntarily withdrawn from the LLC; rather, he had been “expelled.” In response, plaintiffs’ counsel stated, “[P]er-haps I will withdraw my statement that it was a stipulation.” However, counsel continued to make references to the portions of the transcript which “indicated” that Jorio withdrew as of March 24, 2011. Jo-rio’s counsel again denied that Jorio had withdrawn, and he denied entering into a stipulation.
After hearing the testimony and counsel’s arguments, the court concluded that plaintiffs failed to meet their burden of proving that Jorio had withdrawn from the business. In its findings of fact, the court stated:
After weighing the totality of the evidence, this Court finds no affirmative action on the part of [Jorio] to substantiate the allegation that [Jorio] intended to withdraw from the LLC. Additionally, this Court cannot derive that [Jorio] tacitly withdrew from the LLC as a result of [Jorio’s] failure or lack of certain activities.
|uWe agree. At trial, Levendikis testified that Jorio was unsatisfied with the way the distribution of the company’s profits was handled. He stated that shortly after both parties had received a distribution, Jorio approached him about receiving another distribution. Levendikis stated that he denied Jorio’s request because he “did not feel comfortable, at that time, taking a distribution of that amount each out of the account” because the accountant had not “done the numbers.” He also testified that he informed Jorio that if he (Jorio) withdrew the funds from the account, then he (Levendikis) would consider that action as a withdrawal from the LLC. He stated that Jorio replied, “I’m not withdrawing. I’m not withdrawing.”
Jorio unequivocally testified that he had not withdrawn as a member of the LLC. He stated that he considers himself a 49% owner of the business.
Accordingly, we find that the record supports the trial court’s conclusion that plaintiffs failed to meet their burden of proving that Jorio had withdrawn as a member of the LLC. Consequently, we find that the court did not abuse its discretion in denying plaintiffs’ request for a declaratory judgment. This assignment lacks merit.
Plaintiffs also contend the trial court erred in concluding that both parties were “prevailing parties” and, as such, were both entitled to an award of attorney fees and costs, payable from the assets of the LLC. Plaintiffs allege that both parties waived all claims, with the exception of a determination of the value of the LLC’s assets. They argue that neither party should have been deemed a prevailing party, and consequently, the award of attorney fees was erroneous.
Lilt is well-settled that the operating agreement of a limited liability company is contractual in nature; thus, it binds the members of the limited liability company as written and is interpreted pursuant to contract law. Risk Mgmt. Services, L.L.C. v. Moss, 2009-632 (La.App. 5th Cir.4/13/10), 40 So.3d 176, writ denied, 2010-1103 (La.9/3/10), 44 So.3d 683; Kinkle v. R.D.C., LLC, 2004-1092 (La.App. 3d *994 Cir.12/8/04), 889 So.2d 405. Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. arts.1983 and 2045; Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 2012-2055 (La.3/19/13), 112 So.3d 187; Marin v. Exxon Mobil Corp., 2009-2368 (La. 10/19/10), 48 So.3d 234; RJAM, Inc. v. Miletello, 45,176 (La.App.2d Cir.4/14/10), 44 So.3d 283, writ denied, 2010-1127 (La.9/17/10), 45 So.3d 1049.
It is also well-settled that attorney fees are not allowed except where specifically authorized by statute or contract. Sher v. Lafayette Ins. Co., 2007-2441 (La.4/8/08), 988 So.2d 186; Rivet v. State, Dept. of Transp. & Dev., 96-0145 (La.9/5/96), 680 So.2d 1154.
In the instant case, Section 14.7 of the operating agreement provides:
Attorneys Fees. In the event of any litigation, arbitration, or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration, or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys’ fees, and all other costs and expenses incurred in connection with settling or resolving such dispute.
Levendikis and the LLC filed the initial petition, seeking a preliminary injunction, damages and a declaration that Jorio had withdrawn [ isas a member of the LLC. The parties entered into stipulations with regard to the injunction. Concerning damages and the declaratory judgment, Jorio was the prevailing party, as the trial court denied plaintiffs’ claim for damages, finding that Jorio had not withdrawn as a member of the LLC.
Additionally, Jorio filed a recon-ventional demand, alleging that he was entitled to the fair market value of his 49% ownership of the business and damages for Levendikis’s alleged breach of the operating agreement. However, prior to trial, Jorio agreed to waive all claims, with the exception of a valuation of the assets of the LLC. The trial court valued the assets of the LLC and distributed the parties’ proportionate shares accordingly. Thus, neither party was the “prevailing party” as stated in the operating agreement.
However, since Jorio was the prevailing party with regard to plaintiffs’ initial petition, we affirm the trial court’s award of attorney fees to Jorio, and we reverse the award of attorney fees to plaintiffs.
CONCLUSION
For the reasons set forth herein, we affirm the trial court’s denial of the motion for a declaratory judgment filed by plaintiffs, Robert Levendikis and Ark-La-Tex Safety Showers, LLC. We also affirm the court’s award of attorney fees, in the amount of $10,020, to defendant, Tony Jo-rio. Costs of this appeal are assessed to plaintiffs, Robert Levendikis and Ark-LaTex Safety Showers, LLC.
AFFIRMED IN PART; REVERSED IN PART.

. Neither Levendikis nor Jorio had the resources to finance the cost of constructing the trailers. Consequently, they sought and obtained an investor who financed the costs associated with the construction of the safety showers and eyewash equipment trailers. Once each trailer was constructed, Levendikis and Jorio would lease it from the investor and supply it for use by area oilfield drilling and production companies. Over a five-year timetable, the investor would receive a sliding-scale percentage of the profits received. According to Levendikis, the first trailer went into operation onsite in April 2010, and by March 2011, six trailers were in operation at various oilfield drilling locations.

. Pursuant to the operating agreement, neither Levendikis nor Jorio could withdraw from the LLC "except as provided in the Agreement.” The Operating Agreement further provided:
[Section] 3.5 Withdrawal. [A] Member has the power to withdraw but such withdrawal shall be deemed a breach of this Agreement. If a Member does exercise such power of withdrawal in breach of this Agreement, the Member shall be liable to the LLC and the other Members for all monetary damages as a result of the breach, including but not limited to direct, indirect, incidental, and consequential damages. The LLC and the other Members shall not have the right to prevent the withdrawing Member from withdrawing through the use of an injunction or otherwise.

. The court valued the assets as follows:
$80,000 Bank account balance:
$10,000 Value of each trailer:
$ 4,800 Value of two spare generators:
$ 1,000 Value of two tool boxes:
$37,808.60 Accounts receivable from leased interest in six trailers (one year)