Judge Daniel L. Dysart
Yolanda Greenup appeals a judgment of the trial court involuntarily dismissing, with prejudice, her lawsuit against defendants, Hargett Roosevelt, individually, and on behalf of Black Pearl Restaurant. For the reasons that follow, we affirm.
BACKGROUND:
Yolanda Greenup purchased a meal consisting of fried catfish, macaroni and cheese, potato salad and cornbread from Black Pearl Restaurant at approximately noon on July 1, 2016. Ms. Greenup returned to work with her meal and began to consume it between 12:15 and 12:20 p.m. She testified that after eating about three bites of the potato salad, she decided that it tasted "weird" and threw the remainder of the lunch away.
Ms. Greenup first testified that she left work early because of stomach pains, but that she did not experience vomiting and diarrhea until later that night. On cross-examination, she testified that the vomiting and diarrhea began before she left work between 4 and 5 p.m. She also admitted on cross-examination that she had consumed a turkey sandwich at approximately 6 p.m. on June 30, 2016, and a chicken breast with a meal on June 29, 2016.
Ms. Greenup attempted to treat herself with Pepto-Bismol, but when the symptoms continued, she went to the Touro Infirmary emergency room on July 3, 2016. She reported to the emergency room doctor that her pain began two days earlier after eating potato salad. She complained of pain in her stomach, vomiting three times a day for two days, and diarrhea five or six times a day for one day. She gave a history of fibromyalgia, Hepatitis C and respiratory issues. The Touro records indicate that Ms. Greenup was administered medications for nausea and inflammation, *141 and blood was drawn. All of her lab results were normal. She was discharged with prescriptions for Toradol and Zofran[1] and told to follow-up with her regular physician, if necessary.
Ms. Greenup saw Dr. Rachel Oreck on July 5, 2016. She gave a history of having anxiety disorder, depression, asthma and fibromyalgia. Ms. Greenup explained that she had eaten potato salad Friday (July 1), and started having stomach pains, diarrhea and vomiting thereafter. She claimed to have had no solid food since Friday, only water, soup and fruit. Dr. Oreck discharged Ms. Greenup after giving her an injection for nausea. Her diagnosis was bacterial foodborne intoxication, unspecified.
Ms. Greenup did not see another physician until February 21, 2017, when she visited Dr. William W. Alden, on the recommendation of her counsel. She complained of severe pain in the joints of her spine and upper and lower extremities, and pain upon urination. The doctor noted that she appeared to also have conjunctivitis. Dr. Alden concluded that Ms. Greenup had salmonella induced Reiter's syndrome based on her reported history, complaints, and physical findings.[2] His findings were based strictly on the history given to him by Ms. Greenup of having eaten allegedly tainted potato salad on July 1, 2016. Dr. Alden opined that more probably than not, with a reasonable degree of medical certainty, Ms. Greenup's condition was related to the ingestion of food tainted with salmonella, which she had purchased from Black Pearl Restaurant.
A bench trial was held on October 30, 2017. At the close of the plaintiff's case, counsel for the defendants moved for an involuntary dismissal pursuant to La. Code Civ. Proc. art. 1672 B. The trial court granted the motion, dismissing plaintiff's claims, with prejudice. This appeal follows.
DISCUSSION:
Louisiana Code of Civil Procedure art. 1672 B provides:
In an action tried to the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Further, an involuntary dismissal should be granted only if the plaintiff fails to prove his case by a preponderance of the evidence. Brown v. Sargent , 17-0838, p. 3 (La.App. 4 Cir. 3/21/18), 241 So.3d 1115, 1117, citing Kelly v. Housing Authority of New Orleans, 02-0624, p. 5 (La.App. 4 Cir. 8/14/02), 826 So.2d 571, 574.
When considering a motion for involuntary dismissal, the trial court must *142 first weigh and evaluate all the evidence presented to that point and determine whether the plaintiff established a prima facie case by a preponderance of the evidence. Next, unlike the motion for directed verdict in a jury trial, the trial judge reviews the evidence without any special inference favorable to the party opposed to the motion. On appeal, a dismissal pursuant to Article 1672 B should not be reversed absent manifest error. Brown, 17-0838, p. 3, 241 So.3d at 1117.
Ms. Greenup asserts two assignments of error. First, she argues that the trial court committed manifest error in finding that she did not produce sufficient evidence to prove that she, more probably than not, sustained some injury as a result of consumption of a meal sold to her by the defendant. In her second assignment she argues that the trial court abused its discretion when it disregarded the uncontroverted expert opinion of Dr. Alden as to causation. She asserts that the record does not contain any evidence that would cast suspicion on the reliability of his opinion.
As the two assignments of error are interrelated, we will address them together. First, to meet her burden of proof, Ms. Greenup must prove that the food she purchased from Black Pearl Restaurant was tainted when she purchased it. She must next prove the existence of a causal relationship between the illness or injury and the consumption of the food. Crosby v. Wal-Mart Stores, Inc., 10-1015, p. 4 (La.App. 5 Cir. 6/14/11), 67 So.3d 695, 697 (citing Landreneau v. Copeland's Cheesecake Bistro, L.L.C. , 08-647 (La.App. 5 Cir. 1/13/09), 7 So.3d 703 ). Ms. Greenup need not negate every conceivable cause. However, she must show that it is more likely than not that the food's condition caused the injuries of which she complains. Id. Further, "[c]ausation is a factual issue." Levine v. Allstate Ins. Co., 17-0896, p. 2 (La.App. 4 Cir. 4/18/18), 243 So.3d 1286, 1288 (citing D'Angelo v. Guarino , 10-1555, p. 6 (La.App. 4 Cir. 3/9/12), 88 So.3d 683, 688 ).
The trial judge found that there was no dispute that Ms. Greenup contracted food poisoning. The real issue was whether the potato salad purchased from the defendant caused the food poisoning, or whether it was some other food Ms. Greenup had eaten. The judge was particularly concerned with Dr. Alden's testimony concerning the history related to him by Ms. Greenup. The doctor was not aware at the time he treated the plaintiff that she had consumed poultry products on the two days preceding July 1, 2016.
Based on the trial court's statements, it is evident that it was not convinced by Dr. Alden's testimony that the potato salad purchased from Black Pearl Restaurant was the cause of Ms. Greenup's injuries. And, it is well-settled that a trial court is not bound by the testimony of an expert. "Credibility determinations, including evaluating expert witness testimony, are for the trier of fact." Jones v. Harris, 04-0965, p. 15 (La.App. 4 Cir. 2/2/05), 896 So.2d 237, 246 (citing Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-0201, p. 6 (La. 10/19/99), 748 So.2d 417, 421 ). "Such credibility determinations are factual findings governed by the well-settled manifest error standard of review." Id.
Dr. Alden testified that the onset of illness caused by salmonella bacteria could be anywhere from six hours to a couple of days. He opined that the onset of symptoms within four hours would require a lot of bacteria, stating "[s]he would have had to have a large bacteria load from that potato salad." He admitted that a treating physician is not necessarily interested in the source of the salmonella as the symptoms *143 are treated the same regardless of what caused the illness.
Contrary to plaintiff's argument that the trial court disregarded Dr. Alden's uncontroverted testimony, it is clear that the trial court gave great weight to Dr. Alden's opinion that Ms. Greenup contracted Reiter's syndrome from foodborne salmonella poisoning. However, the trial court did not find that Dr. Alden's opinion was sufficient to carry Ms. Greenup's burden of proof as to the source of the salmonella. The trial court was well within its discretion to make such a determination.
Likewise, as the only evidence submitted to prove her case was Dr. Alden's testimony, the medical records from Touro and Dr. Oreck, and Ms. Greenup's own conflicting testimony, we cannot say that the trial court was manifestly erroneous in finding that Ms. Greenup did not prove by a preponderance of the evidence that she contracted food poisoning from food purchased from Black Pearl Restaurant. The medical evidence was all based on the history Ms. Greenup provided to the doctors. As Ms. Greenup revealed on cross-examination, she consumed two different types of poultry on the two days preceding her purchase from Black Pearl Restaurant. That testimony coupled with Dr. Alden's testimony that it usually takes at least six hours for symptoms of food poisoning to manifest, supports the trial court's finding that the cause of Ms. Greenup's illness was not proven.
Accordingly, for the reasons set forth herein, we affirm the ruling of the trial court.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT.

Toradol is a non-steroidal anti-inflammatory drug and Zofran is an anti-nausea drug.

Reiter's syndrome, also known as reactive arthritis, is a type of arthritis that occurs as a reaction to an infection somewhere in the body. Most infections that cause the disease originate in the genitourinary tract (the bladder, urethra, penis, or vagina) and are spread through sexual intercourse, a form of the disease called genitourinary Reiter's syndrome, or urogenital Reiter's syndrome. Other infections that can cause reactive arthritis include gastrointestinal infections due to eating contaminated food or handling contaminated substances, a form of the disease called gastrointestinal Reiter's syndrome, or enteric Reiter's syndrome. Source: stanfordhealthcare.org/medical-conditions/bones-joints-and-muscles/reactive-arthritis /diagnosis.html