| JEFFERSON FINANCIAL FEDERAL CREDIT UNION | * | NO. 2022-CA-0123 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| NEW ORLEANS LIBATIONS AND DISTILLING COMPANY, LLC AND KIRK E. COCO, SR., A/K/A KIRK EMMANUEL COCO, SR. | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-04992, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase)

John M. Landis
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, LA 70112--4042

Jeffrey Alan Jones
D'AQUILA CONTRERAS & VEGAS, APLL
3900 VETERANS BLVD
Ste. 203
METAIRIE, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT


Stephen P. Schott
LISKOW & LEWIS
701 Poydras Street
Ste. 5000
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**OCTOBER 31, 2022**

Jefferson Financial Federal Credit Union ("JFFCU") appeals the trial court's

January 14, 2022 judgment granting the motion for involuntary dismissal filed by

New Orleans Lager and Ale Brewing Company, LLC ("Brewery"), the Walner

Living Trust, and Douglas Walner and Jennifer Walner, Individually and as

Trustees of the Walner Living Trust (collectively the "Walner Trust"), dismissing

JFFCU's claims with prejudice.  For the reasons that follow, we affirm the trial

court's judgment.

**FACTS AND PROCEDURAL BACKGROUND**

On June 23, 2016, New Orleans Libations and Distilling Company, LLC

(the "Distillery") executed a promissory note and security agreement in the sum of

$1,400,000.00 in favor of JFFCU. On the same date, Kirk E. Coco, the sole

member of the Distillery, pledged sixty-five percent of his ownership interest in the

Brewery to secure payment of the promissory note.

1

In 2018, the Walner Trust invested $2,361,150.00 in the Brewery. The other members of the Brewery, including Mr. Coco, were given an opportunity to purchase their respective pro-rata percentage of the new ownership interest and prevent dilution of their ownership percentage. The Brewery issued 157.41 additional membership units in the Brewery to the Walner Trust, increasing the Walner Trust's units to 179.41. As a result, the Walner Trust's ownership percentage increased to approximately sixty-nine percent and Mr. Coco's interest became approximately twenty-four percent.

On May 21, 2018, JFFCU filed a "Petition on Note with Recognition of Security Interest, Recognition of Pledge, and Recognition of Personal Guarantee and for Writ of Sequestration and Writ of Attachment" against the Distillery and Mr. Coco, alleging the defendants failed to pay the installments of the promissory note. Thereafter, JFFCU filed its first amended and supplemental petition, naming the Brewery and the Walner Trust as defendants.

On June 22, 2018, Mr. Coco filed a petition for bankruptcy relief under Chapter Seven of Title 11 of the United States Code. Mr. Coco was subsequently discharged from any personal obligation.

The matter proceeded to trial on May 17 and May 18, 2021. After JFFCU rested its case-in-chief, the Brewery and the Walner Trust moved for an involuntary dismissal pursuant to La. C.C.P. art. 1672(B), arguing that JFFCU failed to show any right to relief against the defendants and that the pledge was valid. The trial court granted the motion and signed the judgment on January 14,

2

2022. On January 26, 2022, JFFCU filed a motion for devolutive appeal. This appeal timely followed.

**STANDARD OF REVIEW**

An appellate court reviews involuntary dismissal under a manifest error standard of review. *Crowe v. State Farm Mut. Auto. Ins. Co.*, 2020-0244, p. 3 (La. App. 4 Cir. 11/18/20), 309 So.3d 773, 776 (citing *Ridgeway v. Pierre*, 2006-0521, 2006-0522, p. 4 (La .App. 4 Cir. 1/11/07), 950 So.2d 884, 888); *see also Peterson v. Rochon*, 2021-0365, p. 4 (La. App. 4 Cir. 12/1/21); 332 So.3d 208, 211. A trial court's findings of fact are reviewed under a manifest error standard of review, and issues of law are reviewed for determination of whether the interpretive decision is legally correct. *Smith v. Charbonnet*, 2017-0634, p. 5 (La. App. 4 Cir. 8/2/17); 224 So.3d 1055, 1059, *writ denied,* 2017-1364 (La. 8/7/17); 222 So.3d 722 (quoting *Nixon v. Hughes*, 2015-1036, p. 2 (La. App. 4 Cir. 9/29/15), 176 So.3d 1135, 1137.

**DISCUSSION**

JFFCU assert two assignments of error:

1) The trial court erred by granting the motion for involuntary dismissal of JFFCU's claims for declaratory relief against the defendants under La. C.C.P. art. 1672(B).

2) The trial court erred by failing to declare that the pledge was valid and enforceable as to the defendants and the ownership interest subject to the pledge had not been diluted through the subsequent creation and issuance of new ownership units.

We begin our discussion by addressing the enforceability of the pledge against the defendants.

*Enforceability of the Pledge*

JFFCU argues that Mr. Coco's pledge of his interest in the Brewery was valid and binding on the Brewery and its members, and every member of a limited liability company has the authority to assign his interest unless otherwise provided in the articles of organization or an operating agreement. JFFCU further argues that it had no knowledge of the transfer restriction contained in the Brewery's operating agreement.

"[A] pledge is an accessory to an obligation it secures and may be enforced by the pledgee only to the extent that he may enforce the secured obligation." La. C.C. art. 3144. Further, an accessory right or obligation may not exist without the coexistence of a primary obligation to which it lends support. *Howard v. Willis-Knighton Med. Center*, 40,634, p. 10 (La. App. 2 Cir. 3/8/06), 924 So.2d 1245, 1253 (internal citation omitted).

The assignment of membership interest is governed by the provisions of La. R.S. 12:1330, which provides in pertinent part:

A. *Unless otherwise provided in the articles of organization or an operating agreement, a membership interest shall be assignable in whole or in part.* An assignment of a membership interest shall not entitle the assignee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.

B. Unless otherwise provided in the articles of organization or an operating agreement, the pledge of or granting of a security interest, lien, or other encumbrance in or against any or all of the membership interest of a member shall not cause the member to cease to be a member or to have the power to exercise any rights or powers of a member.

(Emphasis added.)

"It is well-settled that the operating agreement of a limited liability company is contractual in nature; thus, it binds the members of the limited liability company as written and is interpreted pursuant to contract law." *Ark-La-Tex Safety Showers, LLC v. Jorio*, 48,478, p. 12 (La. App. 2 Cir. 12/18/13), 132 So.3d 986, 993 (citing *Risk Mgmt. Services, L.L.C. v. Moss*, 2009-632 (La. App. 5th Cir.4/13/10), 40 So.3d 176). Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC,* 2012-2055, p. 5 (La. 3/19/13), 112 So.3d 187, 192 (citing La. C.C. arts. 1983 and 2045).

In the instant matter, Section 7.1 of the Brewery's operating agreement provides:

> No Member shall transfer (the word "transfer" meaning, for purposes of this Article VII, any donation, sale, conveyance or alienation, whether by the laws of descent and distribution or otherwise, dissolution of community property regime, pledge, assignment, *or* encumbrance) his or her Interest in the Company, or any part thereof, without first giving written notice to the Company and each other Member, of the nature and precise terms of the proposed transfer, at least sixty (60) days prior to tire proposed date of closing such proposed transfer. No Member may effect a transfer of such Member's Interest, or any part thereof, without (i) Obtaining the prior written consent of all other Members and (ii) complying with the requirements of this Article VII. Further, no Member may effect a transfer of such Member's Interest, or any part thereof, except upon (i) effective registration of the Interest under the Securities Act of 1933, as amended, and any applicable state securities laws *or* (ii) an exemption from any such registration. If transfer is pursuant to an exemption from registration, the Company may require the transferring Member to provide the Company with an opinion of counsel, in form and by counsel satisfactory to the Company (or other documentation satisfactory to the Company), that registration is not required.

JFFCU asserts that the pledge is valid because Mr. Coco, as a member of the Brewery was allowed to assign his ownership interest in the Brewery to secure the promissory note. However, the record is void of any evidence of Mr. Coco giving

written notice to the members of the Brewery of his intent to pledge his sixty-five percent ownership interest in the Brewery to JFFCU.

At trial, Steven F. Griffith, an initial and former member of the Brewery testified that he and his partners from Baker Donaldson law firm prepared the operating agreement. Mr. Griffith explained that Section 7.1 of the operating agreement was a provision to restrict the ability of members to pledge their interest in the company without the unanimous consent of the other members.

JFFCU's commercial lending director, Will Bienvenu, testified that JFFCU was unaware of the Brewery's operating agreement. However, Mr. Bienvenu acknowledged that JFFCU's documents contained two copies of a letter that referenced the Brewery's operating agreement.

Further, a review of the promissory note and pledge reveals that the loan was issued to the Distillery and Mr. Coco was personally liable as a guarantor. Mr. Coco signed the promissory note in his capacity as a member of the Distillery, and signed the act of pledge and acknowledgment of pledge in his individual capacity. There is no indication that Mr. Coco was a signatory to the promissory note and pledge in his capacity as a member of the Brewery. In light of the facts, we find that the Brewery had no primary obligation to JFFCU, thus the pledge is not enforceable against the Brewery. *See Howard*, 40,634, p. 10, 924 So.2d at 1253.

*Involuntary Dismissal*

JFFCU argues that the trial court erred in granting the defendants' involuntary dismissal because it has a right of action against the defendants for a declaratory judgment regarding the validity and enforceability of the pledge. We disagree.

La. C.C.P. art. 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

This Court has consistently held that a trial court has much discretion in deciding a motion for involuntary dismissal. The trial court is required to evaluate all of the evidence presented by the plaintiff and render a decision based upon the preponderance of the evidence. *Crowe v. State Farm Mut. Auto. Ins. Co.*, 2020-0244, p. 8 (La. App. 4 Cir. 11/18/20), 309 So.3d 773, 778-79 (quoting *Ragas v. Hingle*, 2013-1577, pp. 4-5 (La. App. 4 Cir. 7/9/14), 146 So.3d 687, 690-91). "The reviewing court may not disturb the reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable." *Kelly v. Housing Authority of New Orleans*, 2002-0624, p. 6 (La .App. 4 Cir. 8/14/02), 826 So.2d 571, 575.

Here, the record reveals that JFFCU failed to carry its burden of proving that it is entitled to relief against the Brewery and the Walner Trust. In light of Mr. Coco not receiving unanimous consent from other members of the Brewery to pledge his sixty-five percent ownership interest, and finding that the pledge is not enforceable against the Brewery, we find that the trial court did not err in granting the defendants' motion for involuntary dismissal.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's January 14, 2022 judgment granting defendants' motion for involuntary dismissal, and dismissing JFFCU's claims with prejudice.