O’NIELL, Chief Justice.
 

 This is a suit to collect five rent notes, for $55 each, representing the rent of an apartment in New Orleans, from the first of May to the end of September, 1933. The defendant, lessee, pleaded that the lease was canceled by consent of the lessor on the 12th of March, 1933, and that the rent was paid to the end of April, at which time the cancellation went into effect and the lessor, plaintiff in this suit, retook possession of the premises. On the trial of the case the defendant offered oral evidence to prove that it was verbally agreed on the 12th of March, 1933, that the lease should terminate at the end of April; but the attorneys for the plaintiff objected to the testimony on the ground that it tended to contradict a stipulation in the contract of lease, requiring that the lessee should give the lessor “a sixty-day written notice” in order to cancel the lease if he should have to move to another city. The judge reserved his ruling on the objection, and allowed the testimony to be introduced, subject to the objection, but, after all of the evidence was introduced and the case was submitted for decision, the judge sustained the objection to the testimony which the defendant had introduced, and gave judgment for the plaintiff. The judgment was affirmed by the court of appeal.
 

 The contract of lease was signed on the 20th of December, 1932, for the term of nine months, commencing on the 1st of January and ending on the 30th of September, 1933. The rent was payable each month in advance, and was represented by nine promissory notes, with the stipulation that a default in the payment of any one of them would cause all of them to mature. The lessee, Louviere, was employed by the Pan-American Petroleum Corporation at the time when he signed the lease, and was subject to being transferred from New Orleans to some other city at any time. Hence this clause was inserted in the contract of lease, viz.:
 

 “In the event the lessee is officially transferred out of the city by the Pan-American Petroleum Co. this lease can be cancelled by Mr. Ben J. Louviere giving Mrs. M. L. Salley a sixty-day written notice.”
 

 Louviere paid in December the rent for the month of January, and paid promptly the rent for February, but, on account of the closing of the banks at that time, he was not able to pay the rent for March at the beginning of the month; and Mrs. Salley consented to the delay until the 12th of the month. On that day Louviere called at the residence of Mrs. Salley and paid
 
 *95
 
 the rent for March, and at the same time informed Mrs. Salley that the Pan-American Petroleum Corporation had ordered him transferred to New Iberia, and that' he would have to move. It is not disputed that he was ordered transferred to New Iberia and was therefore at liberty to cancel his lease by giving Mrs. Salley the 60 days’ written notice. He testified that, when he called upon Mrs. Salley, on the 12th of March, and informed her of his being ordered transferred to New Iberia, he told her that he wished to give her notice that he wottld terminate the lease at the end of April, and told her that he would pay the rent for April in advance. In fact he did pay the April rent in advance. He testified that Mrs. Salley then mentioned the clause in the lease allowing her to require 60 days’ written notice, but said that she would accept the verbal notice which he was giving. He testified that he told her that she was at liberty then to rent the apartment to some one else, and ‡0 place a “For Rent” sign on the premises, and that as soon as she should find a new tenant he would move out on three or four ■days’ notice, and would not ask for a return of any part of the April rent. According to Louviere’s testimony, therefore, Mrs. Salíey waived the formality of receiving the 60 days’ written notice of the termination of the lease, and consented that it should terminate at the end of April. The testimony of Louviere is corroborated by that of a licensed real estate broker, who testified that Mrs. Salley- called him on the telephone “about the middle of March” and told him that Mr. Louviere was leaving, and asked him, the broker, to find another tenant for the apartment. The broker testified that Mrs. Salley said that he might get the keys from her, in order to show the apartment to prospective tenants; and he testified that thereafter, on several occasions, he showed prospective tenants through the Louviere apartment; and that, on these occasions, he observed that the real estate agent by whom he was employed had placed a “For Rent” sign in front of the Louviere apartment. The same real estate agent and the same broker had represented Mrs. Salley in procuring Louviere as a tenant. The testimony of the broker, as to the placing of the “For Rent” sign in front of the apartment, and as to the broker’s bringing prospective tenants to see the apartment several times between the 12th of March and the 12th of April, 1933, is corroborated, not only by the testimony of Louviere, but also by that of Mrs. Louviere, and by that of a young lady who resided in the apartment with the Louvieres. They moved to New Iberia on the 12th of April, 1933.
 

 The testimony of Mrs. Salley was obtained by depositions taken under commission, and was filed in evidence subject to her objection -to the testimony introduced by Louviere. Mrs. Salley admitted, in her testimony, that, on the occasion when Louviere called at her residence, on the 12th of March, 1933, he informed her that his employer had ordered him transferred to
 
 *97
 
 New Iberia, and that he would have- to move. She testified that her reply to Mr. Louviere was: “If you have to move you will have to pay the rent.” She testified that Mr. Louviere did not give her “any written notice,” and that she did not agree to cancel the lease. She denied that she had authorized the real estate broker to find another tenant for the Louviere apartment, or authorized the placing of a sign on the apartment, advertising it for rent.
 

 If the evidence introduced by Louviere is legal evidence it constitutes a preponderance of the evidence and establishes a complete defense. That is true particularly because Louviere had the right to terminate the lease, by giving the 60 days’ written notice, when he was ordered transferred to New Iberia, and because Mrs. Salley would have had nothing substantial to gain by insisting upon having a written notice, when Louviere gave her the verbal notice. The stipulation allowing Louviere to cancel the lease by giving 60 days’ notice if he should be transferred to another city was for Louviere’s benefit; but the stipulation that the notice should be in writing was for Mrs. Salley’s benefit, and was one which she was at liberty to waive if and whenever she might find that a strict compliance with the stipulation would not be of any benefit or advantage to her.
 

 The ruling of the district court and of the court of appeal in this case is founded-upon the courts’ interpretation of article 2276 of the Civil Code, and the rulings in the following cases: Sharkey v. Wood, 5 Rob. 326; Cary v. Richardson, 35 La. Ann. 505; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646; Brenard Mfg. Co. v. M. Levy, Inc., 161 La. 496, 109 So. 43; Plaza Amusement Co. v. Frank Rubenstein & Co., 163 La. 272, 111 So. 702; Monroe Investment Co. v. Ford, 168 La. 475, 122 So. 586.
 

 Article 2276 of the Civil Code declares that parol evidence shall not be admitted against or beyond what is contained in a written contract, nor on what may have been said before, or at the time of making the contract, or since. This article of the Code is not to be construed so as to forbid the proving by 'parol evidence of a subsequent agreement modifying or abrogating a written contract of a character which the law does not require to be in writing. It is true that the article says that parol evidence shall not be admitted to prove what may have been said by the parties to a written contract, before or at the time of making the contract, or since. But the meaning is that parol .evidence as to what the parties to, a written contract may have said at any time shall not be admitted for the purpose of proving that they had an antecedent or a contemporaneous agreement contrary to that which was reduced to writing. The words “or since” have reference to the phrase “what may have been said,” and not to what may have been agreed to, since the making of the written contract.' It is well settled that this article of the Civil Code does not forbid.
 
 *99
 
 the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement. Commandeur v. Russell, 5 Mart. (N. S.) 456, 459; Bouligny v. Urquhart, 4 La. 29; Knox v. Liddell, 5 Rob. 111, 112; Jamison v. Ludlow, 3 La. Ann. 492, 493; Leeds & Co. v. Fassman, 17 La. Ann. 32; Cain v. Pullen, 34 La. Ann. 511, 517; Cary v. Richardson, 35 La. Ann. 505, 510; Story v. Hope Insurance Co., 37 La. Ann. 254, 258.
 

 In the case of Sharkey v. Wood, 5 Rob. 326, cited in support of the ruling in this case, the second paragraph of the syllabus is misleading, because it is not appropriate to the facts of the- case. The suit was for the balance due on a written contract for the building of a house. On the trial the plaintiff tendered parol evidence of certain arbitration proceedings, in which the arbitrators were not sworn; and the defendants objected to the evidence because the arbitrators were not under oath, and because the effect of the evidence would be merely to show an abandonment of the written contract, and the substitution of “an agreement to pay on the quantum valebant,” which agreement, because of the informality in the arbitration proceedings, was not fulfilled. This decision has been cited several times by this court, but never as authority for the proposition that a written agreement cannot be modified by a subsequent verbal agreement.
 

 In Cary v. Richardson, 35 La. Ann. 505, also cited in support of the ruling made in this case, the court, after quoting article 2276 of the Civil Code, said: “Oral testimony may be admissible, however, between the parties to prove a new and subsequent agreement as regards some part of the previous one.”
 

 In Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646, 649, also cited in support of the ruling in this case, the ruling was merely that the terms of a written contract could not be contradicted by parol evidence of what was said or done “before or at the time of the execution of the writing.” To the same effect was the ruling in Brenard Mfg. Co. v. M. Levy, Inc., 161 La. 496, 109 So. 43, and in Plaza Amusement Co. v. Frank Rubenstein & Co., 163 La. 272, 111 So. 702.
 

 Monroe Investment Co. v. Ford, 168 La. 475, 122 So. 586, was a suit for past-due rent under a written lease, and for annulment of the lease. The defendant, lessee, pleaded that there was a verbal agreement, entered into before the signing of the lease, and confirmed verbally afterwards, that the monthly rent should be $75 less than the amount stated in the written contract of lease, until certain improvements were made. It was held that parol evidence of what was alleged to have been said before or after the signing of the lease was not admissible to prove an antecedent verbal agreement, in contradiction of the agreement which was reduced to writing. That decision is exactly in accord with the language of article 2276 of the Civil Code, for
 
 *101
 
 bidding either party to a written contract to offer parol evidence of what may have been said by the other party, either before or at the time of or after the signing of the contract, to prove an antecedent or a contemporaneous verbal agreement contrary to the agreement which was reduced to writing.
 

 Our conclusion is that the testimony introduced by the defendant in this case, to prove that the lessor waived her right to the 60 days’ written notice of the termination of the lease, and consented that it should terminate at the end of April, 1933, and retook possession of the leased premises, is legal and admissible evidence.
 

 Although all evidence that either party desired to offer was in fact introduced, we deem it necessary to remand the case for a decision on the merits, because the district judge, having concluded that the evidence which the defendant introduced was inadmissible, did not pass judgment upon the sufficiency of the evidence.
 

 The judgment of the district court and of the court of appeal is set aside and the case is ordered remanded to the district court, to be decided on its merits. The plaintiff is to pay the costs of appeal and of this proceeding. The costs already incurred or to be incurred in the district court are to depend upon the final disposition of the case.