CHASEZ, Judge.
This is an action instituted by plaintiff, Edward C. Naquin, against defendant, Ernest L. Holmes, for damages due to the breach of a lease and contract. After trial on the merits, judgment was entered for the defendant dismissing plaintiff’s demands at his cost. From this judgment, plaintiff prosecutes this appeal.
Plaintiff and defendant entered into a lease on August 10, 1957, for a period of three years, with an option to renew for three additional years. The plaintiff exercised the option and thereby extended the lease and contract to August 10, 1963. The lease and contract was for the lease and operation of a service station, restaurant and bar. The defendant, who is a wholesale dealer in the distribution of gasoline, owned the premises and was the lessor. The lease *323 imposed upon the lessee the obligation of paying the rent promptly on the first day of each month. The rental was a stipulated sum, plus 114^ per gallon on the gross gallons of gas pumped each month. The lease likewise provided: a) that if the rent was not paid promptly all of the rent for the remaining term would become due without the formality of putting the lessee in default; b) that the lessee was to carry all of the necessary liability insurance on the premises; c) a stipulation to the effect that the essence of the contract and a serious consideration therefor was that the lessee operate the filling station as a going concern and handle and distribute products distributed by the River Parishes Oil Company (of which the defendant was the chief stockholder); d) the failure to operate the business as a going concern was good cause for the lessor to terminate it; e) the lessor had the duty to make the necessary repairs contemplated within Civil Code Articles 2692, 2717 and 2718.
The parties to this suit operated amicably under this lease until January of 1962, and the record contains no evidence which would indicate that there was any friction or misunderstanding of the terms of the lease before that time.
In December of 1961, the defendant and the plaintiff entered into an oral agreement which would allow the defendant to tear down the existing buildings and erect new ones. We infer from the record that the leased premises were in need of repairs and it was mutually agreed between the parties that it would be desirable to build a new building rather than repair the existing one, since the cost of repairing would be practically the cost of rebuilding. It was agreed between plaintiff and the defendant that the plaintiff would continue to operate the business from temporary quarters during the period of the construction. In early January, 1962, the plaintiff cleared the existing buildings of his equipment so that demolition could begin. On January 3, 1962, demolition of the old building began. On January 8, the plaintiff vacated the premises by abandoning the business and selling the gasoline remaining, in the tanks to the defendant who assumed the operation of the service station. Subsequent to this, the defendant, at various times, bought plaintiff’s service station equipment and supplies as well as some of the bar supplies. In February of 1962, the defendant sent plaintiff a letter stating that he'was cancelling the lease due to the nonpayment of rent for the •month of December and the; failure of plaintiff to carry liability-insurance.
 Plaintiff contends that he still has rights under the written lease and that evidence concerning the oral agreement should not be considered by - the- court for this would be allowing parole evidence to modify a written instrument. However, parole evidence may be considered to prove a subsequent agreement to modify or revoke a prior written agreement. Salley v. Louviere, 183 La. 92, 93, 162 So. 811 (1935); Algiers Homestead Ass’n v. Salathe, 188 So. 202 (La.App.1939) ; Lillard v. Hulbert, 9 So.2d 852 (La.App.1942). In this case the oral agreement clearly modified the written lease subsequent to. its execution, therefore, evidence relative to the terms of the oral agreement was admissible.
The plaintiff testified that he agreed to the demolition of the old buildings' and agreed to continue operating the gasoline station -from temporary quarters during the period of construction. He testified that the defendant agreed to furnish him with two temporary buildings- from which he could operate the service station, restaurant and bar. He stated that once construction began the defendant told him that he would not furnish any buildings for him and that he would have to operate the gasoline station using his truck as an office. Plaintiff stated that after a few days of operating under these conditions he discovered that he could not make a living and that the defendant agreed to operate the gasoline station during construction and would allow him to resume operation of the business when the new building was completed. He stated that it was his understanding that *324 it would take approximately 30 days to construct the new building.
The defendant testified that it was expressly agreed that the plaintiff was to operate the gasoline station during construction which was to take approximately 90 days. In this he was corroborated by plaintiff’s wife. He said that it was necessary to keep the business, which had been in existence for many years, from losing its regular gasoline customers. He stated that when the demolition began there was a portable building on a truck ready to be put in place on the premises of the gasoline station. He contends that he was to furnish the plaintiff with only one temporary building. The building could not be put in place until the existing buildings were demolished and the land leveled; it was actually put in place on January 12, 1962, as soon as the above was accomplished. Other witnesses substantiated the fact that the portable building was located on a truck on the premises when the demolition began and put into place as soon as the premises was prepared. The defendant states that the plaintiff approached him on January 8, 1962, and told him that he was not going to further operate the gasoline station. He stated that he then bought the gasoline in plaintiff’s tanks and assumed operation of the service station. At this point he considered the lease breached and that plaintiff had no right to again operate the business.
Subequently, over a period of four months, Mr. Holmes purchased from Mr. Naquin various equipment which Mr. Na-quin had removed from the service station. The checks paying for such equipment are in the record and the fact that Mr. Naquin sold all his equipment further fortifies our opinion that he had no intention of returning and operating the business.
Since the oral agreement was an addition to and modification of the written contract due to changing circumstances, it must be considered in deciding this case. The question becomes one of fact: What was the oral agreement and who breached it? The trial judge obviously decided that it was still the essence of the contract that the service station be operated as a going business and accepted the defendant’s version of the oral contract. We believe that this was correct. The preponderance of the evidence indicates that the building was to be constructed in 90 days; it indicates that the defendant had available and ready to be put in place a portable building when demolition was .begun; and that the portable building was subsequently put into place. We believe that plaintiff breached the contract and lease by not continuing to operate the business as a going concern. This is true even under the existing conditions for all parties had agreed to the operation of the business during the construction. From the record, which is not as clear as we would like it to be, we cannot say that the holding of the trial judge was manifestly erroneous. The question, as heretofore stated, was a question of fact and we cannot state that the trial judge committed manifest error in holding for the defendant or believing his version of the agreement.
In any event, the record indicates that the rent for December was not paid. Plaintiff testified that he tendered defendant the rent for the month of December in February 1962, although he alleged and testified that it had been previously paid. We are of the opinion that the rent for December was not paid and that this would be sufficient cause for the termination of the lease and contract by the defendant. The plaintiff, however, contends in brief that he did not have full use of the premises for December and this was good cause for not paying the rent. However, the pleadings have no allegation to that effect and the record is devoid of any proof which would indicate that this was so. We are of the opinion that plaintiff breached the lease by abandoning the business, but, likewise the nonpayment of the rent was sufficient *325 ground for the defendant’s termination of the lease.
For the foregoing reasons, the judgment of the court a qua is affirmed at the plaintiff’s cost
Affirmed.