TUCKER, Judge.
Plaintiff-appellee, Southern Fleet Leasing Corporation, leased to defendant-appellant, Jerry W. Brown, d/b/a Typewriter Discounts of Louisiana, ten Toshiba calculators. The lease agreement between the parties was in the form of a written contract which provided for the lease of said calculators for a term of thirty-six months, commencing February 26, 1969, at a monthly rental of $225.89. The lease contained the usual acceleration clause providing that if the lessee failed to pay any installment of rent when due and the default continued for more than ten days after the lessor had demanded payment, all monthly rentals due the lessor and to become due under the lease would immediately become payable in full at the lessor’s option and further provided in such event that fifteen percent additional on the amount due or in said suit should be paid as attorney’s fees. The agreement further provided that upon the expiration or earlier termination of the lease, the lessee would return the equipment in good repair and that the equipment at all times would remain the lessor’s property during the term of the lease.
The lessee paid monthly rentals totaling $2,225.03 but failed to pay timely the rental due on December 12, 1969. Upon termination of the lease, by virtue of the lessee’s default, the lessee was unable to deliver to the lessor and to account for all of the calculators because he had sold them. After amicable demand, this suit was instituted for the balance due on the lease agreement in the sum of $5,707.14 plus legal interest from date of judicial demand until paid and attorney’s fees.
An answer was filed on behalf of lessee alleging that the transaction between lessor and lessee was a sale rather than a lease, that the debt sued upon by lessor was listed as a debt in lessee’s bankruptcy and that lessee was discharged from the debt by his bankruptcy.
At the trial the written lease was introduced into evidence. The lessee admitted that he had executed the written lease and also admitted that he had executed a document entitled “Acceptance of Equipment, Lease No. 3971,” dated February 26, 1969, also offered into evidence.
After trial, judgment was rendered in favor of plaintiff-lessor and against defendant-lessee as prayed for. In his Oral Reasons for Judgment, the trial judge stated that the transaction between the parties was a lease, not a sale, because the agreement did not provide for passage of title; that the lessee had willfully and maliciously converted the calculators in that the sales were intentional, not accidental; and *821 that, accordingly, lessee’s debt was not discharged by bankruptcy.
From said judgment the defendant-lessee has perfected this appeal, and we affirm.
Specified as error is the trial court’s finding that the instrument executed by the parties was a contract of lease and that some of the machines were intentionally, as opposed to accidentally, sold by the defendant, such conduct constituting a malicious conversion. Further specified as error is the insufficiency of the evidence to warrant a finding of willful and malicious conversion of the property under the provisions of the Bankruptcy Act.
The instrument signed by the parties by its unequivocal terms is a lease. Defendant admitted that the written document was a lease. On the front of the lease agreement and just above plaintiff’s signature are the following clearly printed and legible provisions:
“Lessee hereby leases from Lessor who leases to Lessee the equipment described above, upon the terms and conditions set forth on the reverse side of this page; and Lessee acknowledges that Lessee has read them. THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE OF THIS PAGE ARE A PART OF THIS LEASE.
“The undersigned agree to all the terms and' conditions set forth above and on the reverse side hereof, and in witness thereof hereby execute this lease.” (Exhibit D-l, Record, p. 7)
The words “lease,” “Lessor” and “Lessee” are used innumerable times throughout the document, and the assertion that the document was, in fact, a sale is totally without merit. However, defendant contends that even though the agreement was called a “lease,” it actually was intended by the parties to be a sale. In support thereof he relies on a prior business arrangement that he had with plaintiff concerning the lease of fifty typewriters. At the trial, over plaintiff’s objection, the defendant testified that he had made the same arrangements with the plaintiff in 1968 for the lease of fifty typewriters, with the understanding that he could sell the typewriters, and that he had the identical understanding with the plaintiff at the time he executed the lease of the calculators.
The landmark case of Salley v. Louviere, 183 La. 92, 162 So. 811 (1935), spells out when the terms of a written contract may be varied by parol:
“Article 2276 of the Civil Code declares that parol evidence shall not be admitted against or beyond what is contained in a written contract, nor on what may have been said before, or at the time of making the contract, or since. This article of the Code is not to be construed so as to forbid the proving by pa-rol evidence of a subsequent agreement modifying or abrogating a written contract of a character which the law does not require to be in writing. It is true that the article says that parol evidence shall not be admitted to prove what may have been said by the parties to a written contract, before or at the time of making the contract, or since. But the meaning is that parol evidence as to what the parties to a written contract may have said at any time shall not be admitted for the purpose of proving that they had an antecedent or a contemporaneous agreement contrary to that which was reduced to writing. The words ‘or since’ have reference to the phrase ‘what may have been said,’ and not to what may have been agreed to, since the making of the written contract. It is well settled that this article of the Civil Code does not forbid the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement. [Citations omitted]” (Salley v. Louviere, 162 So. 811, 813)
Therefore, the defendant’s testimony for the purpose of proving that he and the plaintiff had agreed that he could sell the calculators or that defendant had a right to *822 lease them to others [1] prior to the execution of the lease agreement was inadmissible to contradict the terms of said written agreement. However, such testimony was admissible as having a bearing on the issue of whether the defendant had willfully and intentionally converted the plaintiff’s property so as to bar his discharge from bankruptcy. The only evidence offered as to such an understanding was the testimony of the defendant, Jerry Brown, who testified that he had an understanding with plaintiff that he could sell the calculators, which was denied by plaintiff’s agents. But defendant argues that we should accept his version of the agreement when we consider the nature of the defendant’s business and the written lease agreement in light thereof.
A consideration of the foregoing would show that to construe the agreement as a lease would lead to absurd consequences. For example, the agreement provided that the equipment should be kept on the lessee’s premises and should not be removed without the lessor’s written consent. It further provided that the lessee could not lend equipment to anyone or permit it to be used by anyone other than the lessee’s own employee. This, it is contended, is an absurdity because defendant was in the business of selling and leasing business machines ; and since he only had a small business with one secretary, he could not possibly use fifty typewriters or ten calculators on his business premises. It is further argued that a simple analysis of the contract documents and the testimony of the witnesses would show that defendant personally ordered ten electronic calculators from a distributor at a total cost of $6,000. The machines were actually delivered to the defendant and were never in the possession of plaintiff. Although the machines were sold on February 27, 1969, to plaintiff for the same sum, on February
26, 1969, the day before the sale plaintiff leased the machines back to defendant. This lease was for a period of three years with thirty-six monthly payments of $225.89 including $217.20 rent and $8.69 use tax. By making thirty-six payments at $217.20, totaling $7,819.20, defendant would have paid plaintiff the original $6,000 cost plus approximately thirteen percent interest at the end of the term of the lease. Additionally, the use tax on the machines, which was four percent or $240, would have been totally repaid in thirty-six payments of $8.69 each, together with an additional thirteen percent interest on the amount of such use tax.
By referring to the chattel mortgage affecting said calculators, it can be observed that on March 7, 1969, the same machines were mortgaged by plaintiff to Louisiana National Bank on a demand note with interest stipulated at eight percent. From this it is argued that any company such as plaintiff which does enough business with a bank to warrant printed forms bearing the titles of both the mortgagor and the mortgagee is paying no more than eight percent interest for its money and more likely its interest rate is less and is gauged to the prime rate.
The foregoing considered, it is submitted that during the term of the “lease” plaintiff would recoup the total cost of the machines, all of the taxes paid thereon and a profit of at least five percent of the purchase price without using any of its own money and without ever handling the machines. Further, the lease agreement provides a space for a specified renewal rate. The terms provide that the lease shall be automatically renewed at this rate for a term of one year upon expiration of the initial term. However, there is no provision in the lease for renewal. It is argued that the obvious reason that there were no *823 renewal provisions in the lease was because it was never intended that the machines be returned.
Thus, defendant submits that it is totally inconceivable that any businessman, much less the defendant with fifteen years of experience, would enter into an agreement to lease a piece of equipment for thirty-six months when that equipment-has a normal useful life of eight years, would pay the total cost of the equipment plus a good profit to the lessor and then give the equipment, with several years useful life remaining, back to the lessor so that he, in turn, can sell it or lease it to someone else. Assuming that plaintiff made a profitable business arrangement with defendant and the nature of defendant’s business and his experience was such that it would not be logical to assume he would have agreed to a lease of the calculators as opposed to a sale of the same on such terms, this evidence in our opinion, would not overcome the positive evidence of the parties’ written agreement to the contrary and the testimony of plaintiff’s agents also to the contrary.
In any event, the trial judge was not manifestly erroneous in assuming that the defendant was well aware that the business transaction in which he was involved with the plaintiff was a lease and that he was prohibited from selling the machines and to do otherwise was an intentional conversion of the plaintiff’s property.
Since the calculators were sold by defendant without the plaintiff’s knowledge or consent and in knowing disregard of plaintiff’s right as owner and lessor thereof, the debt is nondischargeable in bankruptcy. Section 17(a) of the Bankruptcy Act, 11 U.S.C.A., Section 35(a), provides, in part:
“(a) A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as (2) are liabilities for * * * willful and malicious conversion of the property of another; ... or (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.”
A willful and malicious conversion of property has been recognized by our courts as an injury to property within the scope of the foregoing Bankruptcy Act exception and liability therefor is not released by the discharge. See Bergeron v. Courtiade, 198 So.2d 417 (La.App. 4th Cir. 1967).
Whether a conversion is willful and malicious was discussed in Den Haerynck v. Thompson, 228 F.2d 72 (10th Cir. 1955):
“The boundaries of willful and malicious conduct causing injury to the person or property of another within the purview of section 17 of the Act do not lend themselves completely to a clear and definite pattern available for ready use in every case involving the question of non-dischargeability. But it is settled law that such conduct does not necessarily mean or involve a malignant spirit or a specific intention to injure a particular person or harm his property. A willful disregard of that which one knows to be his ditty, or an act which is wrongful in and of itself, and which necessarily causes injury, if done intentionally, is done willfully and maliciously within the scope of the exception to dischargeability created by the statute. . . .” (Den Haerynck v. Thompson, 228 F.2d 72, 74 — Emphasis supplied)
Again, we quote with approval the rule as stated in 9 Am.Jur.2d, Section 792, “Bankruptcy,” pp. 594, 595:
“A conversion of personal property, if wilful and malicious, is an injury to property within the scope of the Bankruptcy Act exception, and liability therefor is not released by the discharge. The injury need not, according to the well-settled rule, involve special or actual malice, in order that liability therefor be excepted from discharge. Liability for conversion by a deliberate disposal of the *824 property of another without semblance of authority therefor or consent thereto is within the exception of a wilful and malicious injury to the property of another. . . .” (Emphasis supplied)
For the above and foregoing reasons, the judgment of the trial court is affirmed, defendant-appellant to pay all costs of this appeal.
Affirmed.

. Paragraph 19 of the lease agreement provides as follows:
“19. ASSIGNMENT. Without Lessor’s prior written consent, Lessee shall not (a) assign, transfer, hypothecate or otherwise dispose of this lease or any interest in it therein, or (b) sublet or lend the equipment or permit it to be used by anyone other than Lessee or Lessee’s employees.”