Judgment rendered December 15, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,170-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MATTHEW LACAS                                    Plaintiff-Appellee

versus

MONROE CREDIT, LLC,                              Defendants-Appellants
WILLYS GERALD, PATRICK
HERRING, AND RICHARD W.
HUYE, JR.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018-3750

Honorable Robert C. Johnson, Judge

* * * * *

WATSON, McMILLIN & STREET, LLP          Counsel for Appellants,
By: David Carlton McMillin                       Monroe Credit, LLC,
    William Michael Street                       Willys Gerald, Patrick
                                                 Herring, Richard W.
                                                 Huye, Jr., and Pamela
                                                 Gerald

HUDSON, POTTS & BERNSTEIN, LLP           Counsel for Appellee
By: G. Adam Cossey

* * * * *

Before MOORE, GARRETT, and THOMPSON, JJ.

**GARRETT, J.**

The defendants, Monroe Credit, LLC ("Monroe Credit"), Willys Gerald[1], Patrick Herring, and Richard W. Huye, Jr., appeal from a trial court ruling that granted a partial summary judgment in favor of the plaintiff, Matthew Lacas.[2] The trial court found that the resignation, in 2011, of Ronnie Ridgdell, a former member of the LLC, constituted a terminating event for the company and any activities unrelated to the winding up of the business that occurred after Ridgdell's resignation, including the expulsion of Lacas, were nullities. The court ordered the liquidation of Monroe Credit. For the following reasons, we reverse the trial court judgment and remand for further proceedings.

## FACTS

Monroe Credit commenced operations on May 1, 2008, pursuant to Articles of Organization ("AO") filed with the Louisiana Secretary of State. The company is engaged in making consumer loans and selling insurance. Many of the issues in this litigation stem from the parties' use of an outdated form to establish an LLC and their failure to obtain legal advice on the front end. Also, the parties never formulated a separate operating agreement. Despite the deficiencies in setting up the LLC, the parties operated what appears to be a successful business enterprise.[3]

---

[1] During the course of this litigation, Gerald died and a motion to substitute his widow, Pamela Gerald, as a proper party defendant was granted by this court on September 1, 2021.

[2] At some points in this record, the plaintiff's last name is spelled "Lacas" and, at other points, it is spelled "LaCas." "Lacas" is the most frequent spelling and will be used in this opinion.

[3] In paragraph seven of his petition, the plaintiff alleged, in part:

The five original members were Lacas, Ridgdell, Gerald, Herring, and Huye. Each owned a 20% share in the company. Effective December 31, 2011, Ridgdell resigned as a member and was paid for his 20% membership. His shares were equally redistributed among the four remaining members, giving each a 25% membership in the LLC. The company continued its business operations. Ridgdell left some investments in the LLC and received a return on them.

In addition to being a member of the LLC, Lacas was also employed as the manager. At some point, the other members suspected that Lacas was mismanaging the company. Lacas acknowledged that he was indebted to Monroe Credit in the amount of $48,661.35. In September 2017, he executed a promissory note for the debt. The holder and owner in due course of the note was GHH Enterprises, LLC ("GHH"), another credit company owned by the members of Monroe Credit. Lacas failed to make the payments on the note. On March 13, 2018, all four members of Monroe Credit met and, in a 3 to 1 vote, revoked Lacas's membership in the company. Lacas joined in the execution of the minutes memorializing the meeting. A "Change of Membership of Monroe Credit" was executed by Gerald, Herring, and Huye. Lacas signed stating he was against the action.

---

Throughout its 10-year history, the company has been a profitable endeavor, generating revenues from loans issued to its customers as well as commissions on insurance that is used for all loans.

In paragraph eight, the plaintiff alleged:

Due to the Company's success, it has consistently paid disbursements to its members in the form of cash payments, in addition to benefits that include automobile and insurance benefits paid by the Company for the benefit of the members.

On November 15, 2018, Lacas filed suit against the defendants for declaratory judgment, damages, and injunctive relief. The suit alleges a myriad of different causes of action and seeks different forms of relief. Lacas claimed his suit concerned a declaration of the membership and ownership interests of Monroe Credit. In his petition, Lacas first sought a declaratory judgment that the attempted revocation of his membership was not authorized in the company's operating agreement or by law. He claimed the revocation was null and that he remained a 25% owner of the company. Second, Lacas argued that, if the revocation was valid, it constituted a terminating event for the company; the company automatically terminated and ceased to exist at that time. He sought to have the company ordered to wind up affairs and pay him his 25% membership interest. Third, Lacas sought an injunction prohibiting the company from any further operations. Fourth, Lacas argued that, because his revocation was a nullity, he was entitled to the fair market value of his 25% share of the company, as well as his share of the distributions, profits, and benefits that had accrued since his attempted revocation. Fifth, Lacas claimed that the defendants committed the tort of conversion. Sixth, Lacas urged that the defendants breached their fiduciary duty to the company and to him. Therefore, he was entitled to damages and attorney fees. Finally, Lacas maintained that the defendants violated the Louisiana Unfair Trade Practices Act ("LUTPA") of La. R.S. 51:1401, et seq. for ejecting him from membership in bad faith and without just compensation. He sought damages. Notably, nowhere in the petition did Lacas ever contend that the company had terminated in 2011 when Ridgdell withdrew.

3

On August 5, 2019, the defendants filed peremptory exceptions of no right and no cause of action. They claimed that Lacas had no right to demand liquidation of the company or injunctive relief because he was no longer a member.[4] According to the defendants, Lacas had no right of action under LUTPA because that action is limited to consumers and business competitors. The defendants acknowledged that Lacas had a right of action to assert a claim for recovery of the value of his interest in the LLC. However, they alleged that any amount he would be entitled to would be offset by his debt to the LLC and damages owed for breach of his fiduciary duty to the company. They maintained that Lacas had no cause of action against the individual members of the company.

A hearing on the exceptions was held on November 13, 2019. Lacas argued that he was only seeking recovery against the LLC and not against the individual members in their personal capacity. That rendered moot the exception of no cause of action. Lacas asserted that he did have a right of action in this matter and there was either no authority to expel him under the LLC's AO or, in the alternative, if there was authority to expel him, the LLC owed him for his membership interest.

At that point in the hearing, the trial court interjected a theory that redirected the course of this litigation. The court opined that, under the terms of the AO, the LLC terminated when Ridgdell resigned in 2011, many

---

[4] La. R.S. 12:1335 provides:

> On application by or for a *member*, any court of competent jurisdiction may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement. [Emphasis supplied.]

4

years before this controversy.[5]  The defendants argued that termination and

dissolution are not the same thing.  They contended that when a terminating

event occurs, the LLC can choose to wind up business or can change the AO

and provide for the continuation of the LLC.  Here, the company chose to

continue business and Lacas never pled that the LLC ceased to exist.

According to the defendants, under its AO, the LLC had the authority to

expel Lacas.

On February 3, 2020, the trial court issued its reasons for denying the

exceptions of no right and no cause of action.  Instead of addressing the

peremptory exceptions and the arguments made by the parties on these

issues, the trial court considered the effect of Ridgdell's resignation on the

continued existence of Monroe Credit as a legal entity.  The court found that

Lacas's expulsion was secondary to the primary terminating event of

Ridgdell's resignation in 2011.  The court determined that there was no

provision for continuing of business operations in the AO or in a written

operating agreement.  After Ridgdell's resignation, the LLC could only do

---

[5] This view was based upon Sections 7.1 and 7.2 of the AO, which provided:

7.1 Term.  The LLC shall commence May 1, 2008 and shall continue in existence until the winding up and liquidation of the LLC and its business is completed following a liquidating event, as provided in section 7.2 hereof.

7.2 Termination.  The LLC shall be terminated upon the first to occur of the following:
(a)  Date:  Infinite
(b) A vote to terminate by Members holding not less than two-thirds (2/3) of the Ownership Interest;
(c) A judgment of termination;
(d) The granting of an order for relief under Chapter 7 of the U.S. Bankruptcy Code (11 U.S.C.A. 701, et seq.); or
(e) The attachment of, or the impossibility of attainment of, the objects and purpose of the LLC.
(f) *Death, insanity, bankruptcy, retirement, resignation or expulsion of any Member*.  [Emphasis supplied.]

those things necessary to wind up the business. However, Monroe Credit continued to operate for several years after Ridgdell's resignation. According to the trial court, any acts by the remaining members, including the attempted expulsion of Lacas in 2018, were in violation of the LLC's AO and the law. Those actions were null and had no legal effect. On March 2, 2020, the trial court signed a judgment denying the exceptions of no right and no cause of action. The defendants did not seek supervisory review of the trial court's ruling on the exceptions.

In June 2020, the defendants filed an answer, generally denying Lacas's allegations and asserting, as an affirmative defense, that when he was a member of Monroe Credit, Lacas breached his fiduciary duties to the entity, as well as negligently and wrongfully performing actions on behalf of the company which caused it financial loss and caused loss to the other members. The defendants claimed that these liabilities offset or exceeded in value any claims asserted by Lacas. [6]

On June 5, 2020, Lacas filed a motion for partial summary judgment. Contrary to the allegations claimed in the petition, Lacas now urged that Ridgdell's resignation in 2011 constituted a "liquidating event" under the AO, and the company failed to wind up its affairs, even after the passage of several years. Lacas sought a judgment ordering the dissolution and winding up of the company and the appointment of a liquidator. He asserted

---

[6]GHH, the owner and holder in due course of Lacas's promissory note, filed a petition of intervention to recover on the debt. In June 2020, Lacas filed a dilatory exception of improper cumulation of actions, seeking to strike GHH's petition for intervention, arguing that the petition did not allege that the claim is dependent on the outcome of the present litigation or that the present litigation will have *res judicata* effect on its rights under the promissory note. On January 4, 2021, the trial court sustained the exception and dismissed the intervention. This ruling has not been appealed.

that, in the denial of the exceptions of no right and no cause of action, the trial court had already determined that a liquidating event occurred, the company was required to wind up its affairs, and all activities beyond the winding up of the company were null. Lacas cited La. R.S. 12:1334, dealing with dissolution, and 12:1336, dealing with winding up affairs, in support of this argument.

On October 12, 2020, the defendants filed their opposition to the motion for partial summary judgment. They urged that the motion sought an involuntary liquidation of Monroe Credit, but Lacas had not established that he was a member of the LLC entitled to seek dissolution. They claimed that the question of whether the company had the intent to continue operations after the resignation of Ridgdell was a genuine issue of material fact and that the members had an unwritten operating agreement to continue the business. Lacas acted in accordance with this agreement and had no intent to liquidate the LLC after Ridgdell's resignation. The defendants contended that unwritten operating agreements are valid, this dispute must be determined in accordance with the law of contracts, and, under La. C.C. art. 2053, the conduct of the parties must be considered in interpreting contracts. Also, the AO was amended in writing in June 2020, to provide for the continued operations of the company after a terminating event. They further asserted that Lacas failed to show that the continued operation of the company was not reasonably practicable, as required by La. R.S. 12:1335, set forth above.

The defendants attached to their opposition the identical affidavits of Gerald, Herring, and Huye. Paragraph four of the affidavits stated:

> The five (5) original members of Monroe Credit, LLC were Patrick Herring, Richard W. Huey, Jr., Ronnie Ridgdell, Matthew Lacas and [Willys Gerald]. We utilized a form we

7

kept on file for preparing the Articles of Incorporation for Monroe Credit, LLC. None of us were (are) practicing attorneys. I understand the form we used predated 1997 and complied with the law in place during that time which required that the withdrawal or death of a member would trigger a liquidating event for a Limited Liability Company, such as Monroe Credit. The language was incorporated into our Articles, but I can affirm under oath that, all members of Monroe Credit, LLC, unanimously, were in agreement that the company's operations would continue despite death or withdrawal of a member unless the remaining members voted otherwise. The language in our Articles to the contrary, providing that withdrawing of a member would be a liquidating event was included in error. We did not need it. We did not want it. No member of the LLC ever voted for or desired to liquidate Monroe Credit, LLC from the moment of its inception in April of 2008 until this present date.

A hearing was held on October 27, 2020. Lacas argued that the written AO applied and no parol evidence was admissible to show that the members of Monroe Credit intended to continue the business instead of liquidating it after Ridgdell's resignation. He also maintained that there could be no valid oral agreement which conflicted with the written AO, citing Section 5.2 of the AO, which provided that, in the event of a conflict between the AO and an operating agreement, the AO would govern. Lacas objected to the admissibility of paragraph four of the defendants' affidavits. He claimed that paragraph contradicted the AO and contained inadmissible parol evidence.[7]

The defendants argued that modification of the AO by a subsequent and valid oral agreement could be proved by parol evidence. They asserted that there was a vice of consent to the language in the AO requiring termination of the company upon the withdrawal of a member.

---

[7] Lacas also objected to paragraph ten of the affidavits which stated that he filed this suit because Monroe Credit failed to give him a severance package. The trial court struck that paragraph.

8

At the hearing, the trial court noted its prior decision on the peremptory exceptions, finding that Ridgdell's resignation was a liquidating event, and everything the company did after the withdrawal of Ridgdell was an *ultra vires* act. It determined that the ruling on the exceptions was law of the case and dispositive of the motion for partial summary judgment.

On December 2, 2020, the trial court filed reasons for its ruling granting the partial summary judgment in favor of Lacas. The trial court adopted by reference Lacas's reply memo to the defendants' opposition to the motion for partial summary judgment and incorporated it into the court's reasons for judgment.

The trial court addressed the conflict between the AO and any written or oral operating agreement the parties adopted and agreed to be governed by. The court cited Section 5.2 of the articles which stated:

> 5.2 No Limitations in Operating Agreement. Third parties are entitled to rely on these Articles of Organization and no power granted herein shall be limited by the Operating Agreement. In the event of a conflict between the Articles of Organization and the Operating Agreement, the Articles of Organization shall govern.

The court stated that there was no genuine issue of material fact as to whether Ridgdell's resignation was a liquidating event that triggered termination and liquidation of the company in accordance with law and the company's AO. The court found that, under the AO, it was not possible for members to agree to continue to operate the LLC after the resignation which "triggered immediate termination and liquidation of the company." Any verbal operating agreement was null and void because it was in conflict with the AO. According to the trial court, the intent of any verbal operating agreement was irrelevant, immaterial, and did not create a genuine issue of

9

material fact that would defeat the grant of summary judgment in this case. The motion for partial summary judgment was granted.

On January 4, 2021, the trial court signed a judgment granting Lacas's motion for partial summary judgment. The court declared that the resignation of Ridgdell constituted a terminating event for the LLC; any activities of Monroe Credit not related to winding up the company that occurred subsequent to the resignation of Ridgdell, including the expulsion of Lacas, were nullities; and Monroe Credit was ordered to be dissolved and liquidated by a court-appointed liquidator. The judgment was certified as a partial final judgment.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants appealed, arguing that the trial court erred in granting a partial summary judgment ordering the liquidation of Monroe Credit despite the existence of material facts disputing Lacas's entitlement to such an order. They contend that the trial court erred in considering its ruling on the peremptory exceptions to be *res judicata* or law of the case on the issue of the occurrence of a liquidating event arising from Ridgdell's resignation. They assert that, after Ridgdell's resignation, all the members, including Lacas, unanimously agreed to continue operations of Monroe Credit for years thereafter. The defendants urge that Lacas did not present the court with undisputed material evidence that he was a member of Monroe Credit when he filed his petition seeking judicial liquidation of Monroe Credit. The defendants also assert that Lacas did not present undisputed evidence that it was not reasonably practicable for Monroe Credit to carry on its business operations and that judicial liquidation was required under La. R.S. 12:1335. These arguments have merit.

10

**Legal Principles**

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Succession of Robinson*, 52,718 (La. App. 2 Cir. 6/26/19), 277 So. 3d 454, *writ denied*, 19-01195 (La. 10/15/19), 280 So. 3d 613.

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Succession of Robinson*, *supra*.

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Saldana v. Larue Trucking, LLC*, 52,589 (La. App. 2 Cir. 4/10/19), 268 So. 3d 430, *writ denied*, 19-00994 (La. 10/1/19), 280 So. 3d 159.

11

In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, 52,601 (La. App. 2 Cir. 5/22/19), 273 So. 3d 656, *writ denied*, 19-01188 (La. 10/15/19), 280 So. 3d 602; *Collins v. Hill*, 52,457 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1202.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth

specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); *Shields v. McInnis Bros. Constr., Inc.*, 53,581 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1079; *Doerle Food Servs., L.L.C. v. River Valley Foods, L.L.C.*, *supra*; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219.

### *Res Judicata* and Law of the Case

The defendants claim that the trial court erred in determining that its prior interlocutory ruling on the peremptory exceptions was *res judicata* or law of the case. According to the defendants, by finding it was bound by its prior ruling that Ridgdell's resignation was a liquidating event for the LLC, the trial court ignored evidence of genuine issues of material fact in conflict with the motion seeking judicial liquidation. They urge this court to correct the error.

A peremptory exception may be urged at any time. La. C.C.P. arts. 928, 2163. A party may reurge a peremptory exception after a denial of the exception. *Teachers' Retirement Sys. of La. v. Louisiana State Employees' Retirement Sys.*, 456 So. 2d 594 (La. 1984); *Southern Trace Prop. Owners Ass'n v. Williams*, 50,992 (La. App. 2 Cir. 11/23/16), 210 So. 3d 835; *G.B.F. v. Keys*, 29,006 (La. App. 2 Cir. 1/22/97), 687 So. 2d 632, *writ denied*, 97-0385 (La. 3/21/97), 691 So. 2d 94; *Herrera v. Beatrice Gallegos & USAgencies Cas. Ins.*, 14-935 (La. App. 5 Cir. 10/28/15), 178 So. 3d 164. Interlocutory orders overruling peremptory exceptions cannot be binding upon the trial court when it timely – but later – determines error of judgment based upon the matter as submitted or upon subsequent disclosures in the

record which require a contrary holding. *Babineaux v. Pernie-Bailey Drilling Co.*, 261 La. 1080, 262 So. 2d 328 (1972).

The denial of a peremptory exception is an interlocutory judgment, not a final judgment. La. C.C.P. art. 1841. Hence, the doctrine of *res judicata* does not apply. *See Southern Trace Prop. Owners Ass'n v. Williams*, *supra*; *Eastin v. Entergy Corp.*, 07-212 (La. App. 5 Cir. 10/16/07), 971 So. 2d 374, *writ denied*, 07-2214 (La. 1/11/08), 972 So. 2d 1167.

The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. *Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 256 So. 2d 105 (1971). *See also Arceneaux v. Amstar Corp.*, 10-2329 (La. 7/1/11), 66 So. 3d 438. The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. *Arceneaux v. Amstar Corp.*, *supra*; *Petition of Sewerage & Water Bd. of New Orleans,* 278 So. 2d 81 (La. 1973). However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice. *Arceneaux v. Amstar Corp.*, *supra*; *Petition of Sewerage & Water Bd. of New Orleans*, *supra*; *J-W Operating Co. v. Olsen*, 49,925 (La. App. 2 Cir. 6/24/15), 167 So. 3d 1123.

14

In opposition to Lacas's motion for partial summary judgment, the defendants argued, as they did in their peremptory exceptions, that because Lacas was not a member of the LLC, under La. R.S. 12:1335, he was not entitled to seek dissolution of the company. At the hearing at issue here, the trial court erroneously determined that its ruling on the exceptions, based upon its interpretation of the effect of Ridgdell's resignation, was law of the case.[8] The trial court erred in applying the law of the case doctrine. Here, the defendants were entitled to reurge the peremptory exceptions at any time. The defendants' failure to seek supervisory review of the ruling on the exceptions did not bar reconsideration of the issues presented therein.

As pointed out in *Babineaux v. Pernie-Bailey Drilling Co.*, *supra*, the law of the case doctrine is merely a court practice, usually applied at the appellate court level, in regard to parties who have had the identical issue presented and decided previously by the appellate court in an earlier appellate proceeding in the same case. When applied to certain trial court rulings, it is for that court a discretionary guide. In *Babineaux*, the Louisiana Supreme Court ruled that law of the case would not bar reconsideration of issues previously raised in a peremptory exception.

Also, application of the law of the case doctrine is discretionary. This is particularly true where palpable error may be present in the decision or where application of the doctrine would result in injustice. In this case, the trial court decided the peremptory exceptions based upon theories and issues not raised by either party. The defendants were not afforded an opportunity

---

[8] The defendants assert that the trial court also found the ruling on the peremptory exceptions was *res judicata*. The ruling on the peremptory exceptions was interlocutory and not a final judgment; therefore, *res judicata* did not apply.

15

to fully address the issues raised by the trial court. In finding that the ruling on the exceptions was law of the case, the trial court again denied the defendants an opportunity to fully address the effect of Ridgdell's resignation on the subsequent conduct of Monroe Credit's business. Under the facts presented here, the application of the doctrine of law of the case results in injustice in this matter. The erroneous trial court ruling applying law of the case is reversed.

**Requirement of Dissolution**

In their remaining assignments of error, the defendants essentially argue that the trial court erred in finding that Ridgdell's resignation was a terminating event requiring dissolution of Monroe Credit, without considering the subsequent actions of the parties in continuing to conduct the business of the company. They urge that there is a genuine issue of material fact as to whether the parties, including Lacas, agreed to continue the business after Ridgdell's resignation. They claim that there is a genuine issue of material fact as to whether Lacas was a member of the company, entitled to seek liquidation of the company under La. R.S. 12:1335. They also contend that Lacas failed to show that it was not reasonably practicable for the company to continue business after Ridgdell's resignation, an element of proof required by La. R.S. 12:1335.

The defendants urge that the parties had a valid agreement to continue the business after Ridgdell's resignation. They contend that the provision in the AO specifying that resignation of a member was a terminating event was included by mistake. The defendants maintain that the parties' undisputed course of conduct in interpreting the contract in the years prior to this lawsuit may show their true intent, citing La. C.C. art. 2053 and *McCartney*

16

*v. McCartney*, 52,209 (La. App. 2 Cir. 8/15/18), 256 So. 3d 1101. They argue that all parties, including Lacas, intended to continue the business and did so for more than six years. Also, in 2020, the defendants amended the AO to provide for the continuation of the LLC after the occurrence of a terminating event.

The defendants argue that no contract should be interpreted in such a manner that leads to absurd consequences, citing La. C.C. art. 2046. The defendants contend that the trial court's interpretation of the AO, requiring dissolution after Ridgdell's resignation, with no provision for continuing the business, renders null every loan made in the years following that event, and may require Lacas to repay all salary and other remuneration received during those years. They urge that this would be an absurd consequence.

A contract is an agreement between two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053.

La. C.C. art. 1848 provides:

Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. *Nevertheless, in the interest of justice, that evidence may be admitted* to prove such circumstances as a vice of

17

consent or *to prove that the written act was modified by a subsequent and valid oral agreement.* [Emphasis supplied.]

A contract that is not required by law to be in writing may be modified by a subsequent oral agreement, and parol evidence is admissible to prove the modification. *Monroe v. Physicians Behavioral Hosp., LLC*, 49,248 (La. App. 2 Cir. 8/13/14), 147 So. 3d 787. Even contracts that contain a provision specifying that it may only be modified in writing may be subsequently modified by oral agreement. The modification may be presumed from silence, inaction, or implication. *Monroe v. Physicians Behavioral Hosp., LLC*, *supra*. Thus, the court may consider parol evidence as proof of a subsequent agreement to modify or revoke a written agreement by mutual consent of the parties. *Torrey v. Simon-Torrey, Inc.*, 307 So. 2d 569 (La. 1974), citing *Salley v. Louviere*, 183 La. 92, 162 So. 811 (1935); *Grosjean v. Grosjean,* 45,529 (La. App. 2 Cir. 10/13/10), 50 So. 3d 233, *writs denied*, 10-2619 (La. 2/4/11), 56 So. 3d 980 and 10-2623 (La. 2/4/11), 57 So. 3d 311. *See also Schindler Elevator Corp. v. Long Prop. Holdings, L.L.C.*, 50,199 (La. App. 2 Cir. 11/18/15), 182 So. 3d 233.

Whether an oral agreement modified a written contract is a question of fact. *Schindler Elevator Corp. v. Long Prop. Holdings, L.L.C.*, *supra*; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058.

La. R.S. 12:1305 provides, in part:

The articles of organization shall be written in the English language and shall be executed by at least one person, who need not be a member or manager of the limited liability company. The articles of organization shall be acknowledged by the person or one of the persons who signed the articles of organization or may be executed by authentic act.

18

The items that must be included in the AO are the name of the LLC and the purposes for which the LLC is formed, or that its purpose is to engage in any lawful activity for which LLCs may be formed. The AO *may* set forth the latest date, if any, on which the limited liability company is to dissolve. La. R.S. 12:1305.

La. R.S. 12:1309 provides, in pertinent part:

A. The articles of organization shall be amended when any of the following occurs:

(1) There is a change in the name of the limited liability company.

(2) There is a false or erroneous statement in the articles of organization.

(3) The members desire to make a change in any other statement in the articles of organization in order to accurately represent their agreement.

An operating agreement for an LLC means any agreement, written or oral, of the members as to, or in the case of an LLC having a single member, any written agreement between the member and the company memorializing the affairs of an LLC and the conduct of its business. La. R.S. 12:1301(A)(16). An LLC's operating agreement is contractual in nature. It binds the members of the company as written and is interpreted pursuant to the law of contracts. *Powertrain of Shreveport, L.L.C. v. Stephenson*, 49,327 (La. App. 2 Cir. 10/1/14), 149 So. 3d 1274; *Ark-La-Tex Safety Showers, LLC v. Jorio*, 48,478 (La. App. 2 Cir. 12/18/13), 132 So. 3d 986.

Regarding the dissolution of an LLC, La. R.S. 12:1334 provides:

Except as provided in the articles of organization or a written operating agreement, a limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:

19

(1) The occurrence of events specified in writing in the articles of organization or operating agreement.

(2) The consent of its members in accordance with R.S. 12:1318.

(3) Repealed by Acts 1997, No. 717, § 2, eff. July 8, 1997.

(4) Entry of a decree of judicial dissolution under R.S. 12:1335.

Except as otherwise provided in the AO or a written operating agreement, upon dissolution, the members shall wind up the LLC's affairs. La. R.S. 12:1336.

We note that, in the affidavits by the defendants, they claim the provision that the resignation of a member would be a liquidating event was included in error due to the use of a form that pre-dated 1997. Prior to 1997, La. R.S. 12:1334(3) specified that, except as provided in the AO or a written operating agreement, a limited liability company would be dissolved and its affairs shall be wound up upon the first to occur of several events, including:

> The death, interdiction, *withdrawal*, expulsion, bankruptcy, or dissolution *of a member* or the occurrence of any other event which terminates the continued membership of a member in the limited liability company, *unless within ninety days after such event, the limited liability company is continued by the unanimous consent of the remaining members or as otherwise provided in the articles of organization or a written operating agreement* and, if membership is reduced to one, the admission of one or more members. [Emphasis supplied.][9]

The repeal of this provision in 1997 was in response to changes in the law, making it unnecessary. The reason that the provision was in the law to begin with was explained in Susan Kalinka, et al., 9 La. Civ. L. Treatise, *Limited Liability Companies and Partnerships* §1:50 (4th ed. 2015):

---

[9] In 1993, this provision was amended to delete the word "written" preceding "consent." Therefore, after 1993, the agreement to continue business after a liquidating event was not required to be in writing. *See* Acts 1993, No. 475, §4, eff. June 9, 1993.

20

Prior to its amendment in 1997, the Louisiana LLC Law provided that unless otherwise provided in an LLC's articles of organization or a written operating agreement, an LLC dissolved on the death, interdiction, withdrawal, expulsion, bankruptcy, or dissolution of a member or any other event that terminated a member's membership in the LLC. *Dissolution of an LLC on the termination of a member's interest could be avoided under former law if, within ninety days of the event causing the member's interest to terminate, the remaining members consented to continue the LLC. . . .*

The pre-1997 default rules of the Louisiana LLC Law triggering dissolution on the termination of a member's interest were designed to ensure that a Louisiana LLC would be classified as a partnership for federal tax purposes under the former entity classification regulations. Under the former entity classification regulations, an LLC was classified as a partnership if it lacked at least two of the following four corporate characteristics: (1) continuity of life, (2) centralized management, (3) limited liability, and (4) free transferability of interests. In many cases, it was important for an LLC to lack continuity of life under these provisions.

Under the former regulations, an LLC lacked continuity of life if it dissolved on the death, insanity, bankruptcy, retirement, resignation, or expulsion of a member or any other event of withdrawal of a member. *The former regulations, however, permitted the members to consent to continue an LLC after the withdrawal of a member without causing the LLC to have continuity of life.* The pre-1997 default rules of the Louisiana LLC Law were written with these requirements in mind. . . .

Now that the "check-the-box" regulations have been issued in final form, it is no longer necessary for an LLC to dissolve on the termination of a member's interest for tax classification purposes. Under the check-the-box regulations, an LLC in many cases may elect to be classified either as a partnership or as an association taxable as a corporation without regard to the requirements that needed to be satisfied under the former classification regulations. . . . The provisions of the check-the-box regulations are effective as of January 1, 1997. Thus, an LLC formed on or after January 1, 1997, may be classified as a partnership without complying with the rules of the former classification regulations, and *it is not necessary for such an LLC to dissolve on the withdrawal of a member.* [Footnotes omitted; emphasis supplied.]

The resolution of this case involves mixed questions of law and fact.

We find that there are genuine issues of material fact as to whether the parties, including Lacas, agreed to continue the LLC; whether, under the

21

applicable law they could do so; and whether the amendment of the AO was effective in ratifying the parties' action in continuing the business after Ridgdell's resignation. Also, there may be a genuine issue of material fact as to whether, due to his acquiescence in the continuation of the LLC for many years, Lacas is estopped from arguing that the LLC must necessarily be dissolved. [10]

Further, it appears that the trial court's construction of the AO, to render null all activities of Monroe Credit for years following Ridgdell's resignation, would lead to absurd consequences. The company paid thousands of dollars to Lacas in salary in the years following Ridgdell's resignation and the company made numerous consumer loans. If all these actions were considered to be null, Lacas might have to repay his salary and all the loans would be invalid. Because, under La. C.C. art. 2053, the provisions of the AO are doubtful, a search may be made as to the parties' intent. On this issue, there is a genuine issue of material fact which precludes the grant of a partial summary judgment.

The defendants further contend that there is a genuine issue of material fact as to whether Lacas was a member of the LLC, entitled to seek dissolution under La. R.S. 12:1335. This statute requires membership in the LLC to apply to the court for dissolution. *See Schauf v. Schauf*, 51,919 (La. App. 2 Cir. 4/25/18), 247 So. 3d 172; *Lindsay, Marcel, Harris & Pugh,*

---

[10]We note that estoppel is an affirmative defense that must be specially pleaded. See La. C.C.P. art. 1005. While the answer does not raise the affirmative defense of estoppel, in their opposition to the motion for partial summary judgment, the defendants maintained that Lacas's prior conduct while an active member of the LLC estops him from asserting any claim for liquidation of the LLC based upon Ridgdell's resignation in 2011. We also observe that the record contains a deposition by Lacas, given in conjunction with the peremptory exceptions, in which he stated that, when Ridgdell resigned, he was not interested in shutting down the business.

22

*L.L.C. v. Harris*, 1998-2677 (La. App. 1 Cir. 2/18/00), 752 So. 2d 335. If there was a valid agreement to continue the business of the LLC after Ridgdell's resignation, the LLC's action in expelling Lacas was not necessarily null. Also, in his pleadings below, Lacas argued that, under the AO, the defendants had no authority to expel him as a member of the LLC. Therefore, there are genuine issues of material fact as to whether Lacas's expulsion from the LLC was valid and whether, at the time he filed suit seeking dissolution of the LLC, he was a member. The existence of these genuine issues of material fact precludes the grant of partial summary judgment.

The defendants maintain that Lacas failed to show that dissolution of the business was necessary because it was not reasonably practicable to carry on the business in conformity with the AO. Because there is a genuine issue of material fact as to whether the LLC was continued by agreement of the parties after Ridgdell's resignation, there is also a genuine issue of material fact as to whether Lacas showed that it was not reasonably practicable to carry on the business in conformity with the AO. The existence of this genuine issue of material fact also precludes the grant of a partial summary judgment.

We do not make any ruling on the merits of the issues raised in this case. We merely find that the existence of multiple genuine issues of material fact precludes partial summary judgment and requires full consideration by the trial court at a trial on the merits.

**CONCLUSION**

For the reasons stated above, we find that the trial court erred in granting partial summary judgment in this case. That ruling is reversed and

23

the matter is remanded to the trial court for further proceedings.  Costs in this court are assessed to the plaintiff, Matthew Lacas.

**REVERSED; REMANDED FOR FURTHER PROCEEDINGS**.